124 T.C. No. 9


UNITED STATES TAX COURT



RONALD J. AND JUNE M. SPELTZ, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 15382-03L.                    Filed March 23, 2005.

        Ps incurred AMT liability as a result of their
exercise of incentive stock options in 2000.  The stock
declined precipitously in value after the date of
exercise.  Ps partially paid the tax liability and
submitted an offer in compromise with respect to the
unpaid balance.  The IRS rejected the offer in
compromise and filed a lien on Ps' property.  <u>Held</u>:  It
was not an abuse of discretion to reject Ps' offer in
compromise and to continue the lien.

<u>Timothy J. Carlson</u>, for petitioners.

<u>Albert B. Kerkhove</u> and <u>Stuart D. Murray</u>, for respondent.

OPINION

COHEN, <u>Judge</u>:  This case is before the Court on respondent's motion for summary judgment, seeking a determination sustaining an Appeals officer's rejection of petitioners' offer in compromise.  Petitioners seek a summary determination that it was an abuse of discretion to refuse their offer in compromise because of the unfair application of the alternative minimum tax (AMT) based on their exercise of incentive stock options (ISOs) where the stock acquired by exercise of the ISOs has lost substantially all of its value subsequent to the acquisition of the stock.  Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

In ruling on respondent's motion for summary judgment, factual inferences are viewed in the light most favorable to petitioners.  <u>Preece v. Commissioner</u>, 95 T.C. 594, 597 (1990).  Thus, the background facts set forth herein are based primarily on petitioners' declaration in opposition to the motion for summary judgment and on other materials submitted by petitioners.

Petitioners resided in Ely, Iowa, at the time that they filed their petition.  For some years prior to 2000, petitioner Ronald J. Speltz (petitioner) was employed by McLeodUSA (McLeod).  By 2000, petitioner was a senior manager at McLeod earning wages

in excess of $75,000.  By 2004, petitioner's wages were approximately $90,000 per year.  As part of his compensation at McLeod, petitioner received ISOs for acquisition of McLeod stock.

During the year 2000, petitioner exercised certain of the ISOs that he previously had received.  On petitioners' Form 1040, U.S. Individual Income Tax Return, for 2000, petitioners reported, for purposes of the AMT, those ISOs as resulting in "excess of AMT income over regular tax income" of $711,118.  On their Form 1040, petitioners reported that their "regular" adjusted gross income was $142,070.  Their taxable income was $105,461, and their "regular" tax was $18,678.  Petitioners reported AMT of $206,191 for a total tax liability of $224,869.  After application of Federal income tax withheld, the balance owed on petitioners' tax liability for 2000 was $210,065.  Petitioners also filed a 2000 Iowa Individual Income Tax Long Form, IA 1040, on which they reported Iowa minimum tax of $46,792 and a total tax liability of $56,769.

The value of petitioners' McLeod stock dropped precipitously.  On their tax return for 2000, petitioners reported that they sold 200 shares of McLeod stock on January 14 for a total of $14,011 and 500 shares of McLeod stock on March 10 for a total of $52,282.  On their tax return for 2002, petitioners reported that they sold 2,070 shares of McLeod stock on December 30 for a total of $1,647.

Petitioners partially paid the liability reported on their 2000 Form 1040 at the time that it was filed and paid an additional $75,000 in installments prior to November 2, 2001. Petitioners borrowed $134,000 from a bank to pay State and Federal taxes reported on their 2000 returns.

On or about November 2, 2001, petitioners submitted to the Internal Revenue Service (IRS) a Form 656, Offer in Compromise. Petitioners offered a cash payment of $4,457, the cash value of petitioner's life insurance policy, against the liability that then exceeded $125,000. On the Form 656, petitioners checked the box for "Doubt as to Collectibility--'I have insufficient assets and income to pay the full amount.'" Petitioners also attached to Form 656 a statement in which they explained that an offer in compromise was necessary because of the impact the AMT in 2000 had on their finances and their lifestyle. Specifically, petitioner's income in 2000 was at a comfortable level for a family of five including three young daughters; the McLeod stock they held was nearly worthless and declining and had been used to secure a $134,000 loan with a bank to pay part of the 2000 Federal and State taxes; and, in the event of a sale of the stock (forced or otherwise), petitioners would be unable to carry back the capital loss to offset their 2000 gain. They began building a new home in 2000 and sold their prior home in 2001, using the proceeds of sale to repay the bank. Lifestyle changes were

necessary, including: Petitioner June M. Speltz had to get a job instead of staying home with the children; the oldest daughter had to switch schools; petitioners were unable to contribute to their retirement and to their children's education fund; and they had to reduce their charitable donations. Finally, they could not afford to have a fourth child, which they had wanted. Petitioners offered in compromise $4,457, the cash surrender value on petitioner's life insurance. In the statement, petitioners expressed their mental anguish and frustration with the unfairness of their situation.

Petitioners' offer in compromise was reviewed by Revenue Officer Robert G. Dallas (Dallas), an offer in compromise specialist. Dallas indicated to petitioners that he was rejecting the offer in compromise because petitioners had the ability to pay the outstanding tax liability in full. On October 6, 2002, petitioners wrote to Dallas disputing amounts that Dallas had used in his calculation. On October 9, 2002, Dallas indicated that certain adjustments that were requested by petitioners had been made. He wrote, however:

> The adjustments to the Income/Expense table you requested have not been granted because the allowed amount * * * is the allowable housing and utility standard for families of your number in Linn County, Iowa. The excess expenses you have claimed * * * cannot be moved * * * solely to circumvent the allowable standard amount.
>
> Based upon your current financial condition, we have determined that you have the ability to pay your

liability in full within the time provided by law.  We have made this determination based on the following computations:

    Total net equity in assets:        $77,948.00
    Total future ability to pay
       and retire debt:                $113,568.00
    Total ability to pay:              $191,516.00
    Total balance due:                 $148,744.64
    Amount you offered:                  $4,457.00

Copies of our worksheets are enclosed for your review.

Your options at this time are to pay your liability in full, enter into an installment agreement, withdraw your offer using the withdrawal letter previously provided or withhold your response and appeal your offer's failure to gain acceptance through the appeal procedure that you will be offered.  Please advise of your preferred course of action.

Please respond within 14 days of the date of this letter.  If you fail to respond or if your response is egregiously inadequate, a Federal Tax Lien will be filed if one is not already a matter of record and the case will be forwarded to an independent reviewer without a recommendation for approval.  If the reviewer concurs with the conclusion of my investigation, you will be notified by mail and advised of your appeal rights.  If there is a need for additional information you will be notified.

On December 17, 2002, respondent sent to petitioners a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, with respect to their unpaid income tax liability for 2000, advising that petitioners could request a hearing with respondent's Office of Appeals.  On January 13, 2003, petitioners submitted a Form 12153, Request for a Collection Due Process Hearing.  Petitioners stated that they were disagreeing with the Notice of Federal Tax Lien because:

Forms 433-A and 656 have been prepared and filed with the IRS as an Offer in Compromise. The only real estate owned by the taxpayers is their personal residence * * *. Such residence constitutes exempt property, and therefore, the IRS' attempted lien is unenforceable.

Petitioners' Request for a Collection Due Process Hearing was signed by their then attorney.

On February 12, 2003, a telephone conference was held between respondent's Appeals Officer Eugene H. DeBoer (DeBoer) and petitioners' attorney. On February 13, 2003, DeBoer wrote to petitioners' attorney a letter summarizing their discussion and stating the following:

In regards to your question about changes to the alternative minimum tax laws. At this time there is no pending legislation that would retroactively change how the AMT was computed for 2000. Accordingly, the tax as reported appears to be correct.

Neither petitioners nor their attorney responded to the February 13, 2003, letter from DeBoer. Instead, petitioners' attorney contacted their Senator and the Taxpayer Advocate Service.

On August 12, 2003, a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 was sent to petitioners. The attachment to the notice explained the determination as follows:

## SUMMARY AND RECOMMENDATION

Should the lien be released or withdrawn?

No, the tax as assessed is deemed correct and the offer in compromise proposed by the taxpayers has been rejected.

## BRIEF BACKGROUND

Mr. and Mrs. Speltz filed their 2000 return showing a liability of $209,749.77.  They made a payment with the return of $17,565.  Payments of $70,000 were made prior to an installment agreement which was entered into for $2,500.  Two payments of $2,500 made prior to the filing of an offer in compromise of $4,457 on 11/2/2001.  The offer was rejected due to the taxpayers having assets and the ability to full pay the liability.  A lien was then filed.  The taxpayers' representative states on the request for a collection due process hearing that the personal residence constitutes exempt property and therefore the IRS' attempted lien is unenforceable.  A phone conference was held with the representative, * * * who questioned whether there was any pending legislation aimed at changing how the alternative minimum tax is computed. A check with the national office shows that there is no pending legislation to retroactively adjust how the alternative minimum tax is computed.

## DISCUSSION AND ANALYSIS

1. <u>Verification of legal and procedural requirements</u>; Yes

2. <u>Issues raised by the taxpayer</u>; The offer in compromise was rejected.

3. <u>Balancing of need for efficient collection with taxpayer concern that the collection action be no more intrusive than necessary</u>.  The collection action balances the need for the efficient collection of taxes with the Speltz's legitimate concern that the collection action be no more intrusive than necessary.

The petition in this case was filed by petitioners pro se;

counsel entered his appearance after respondent filed a motion

for summary judgment.  In their petition, petitioners do not allege any specific abuse of discretion with respect to the notice of determination.  Instead, they refer to their communications with the Taxpayer Advocate's Office and to the office of their Senator.

## Discussion

Section 6321 imposes a lien in favor of the United States on all property and rights to property of a person when a demand for the payment of the person's taxes has been made and the person fails to pay those taxes.  Section 6322 provides that such a lien arises when an assessment is made.  To protect the Government's rights to recover its unpaid taxes, section 6323(a) provides that the IRS may file a notice of Federal tax lien in order to establish the priority of its claims against the taxpayer's other creditors.

In the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3401, 112 Stat. 746, Congress enacted sections 6320 (pertaining to liens) and 6330 (pertaining to levies) to provide protections for taxpayers in tax collection matters.  Section 6320 requires that the Secretary notify a person who has failed to pay a tax liability of the filing of a notice of lien under section 6323.  The notice required by section 6320 must be provided not more than 5 business days after the day of the filing of the notice of lien,

pursuant to section 6320(a)(2). Section 6320 further provides that the person so notified may request administrative review of the matter (in the form of a hearing) within 30 days beginning on the day after the 5-day period. Under section 6320(c), the hearing generally is to be conducted consistent with the procedures set forth in section 6330(c), (d), and (e). Section 6330(c) permits the person notified to raise collection issues such as spousal defenses, the appropriateness of the Commissioner's intended collection action, and possible alternative means of collection.

Section 6330(d) provides for judicial review of the administrative determination. Where the validity of the underlying tax liability is not properly at issue, the Court will review the Commissioner's administrative determination for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 179 (2000); see also H. Conf. Rept. 105-599, at 266 (1998), 1998-3 C.B. 747, 1020.

Also in 1998, Congress amended section 7122, which authorizes compromise of any civil case arising under the internal revenue laws. RRA 1998, sec. 3462, 112 Stat. 764. Subsections (c) and (d) of section 7122 were amended for proposed offers in compromise and installment agreements submitted after July 22, 1998, and provide as follows:

SEC. 7122(c).  Standards for Evaluation of Offers.--

(1) In general.--The Secretary shall prescribe guidelines for officers and employees of the Internal Revenue Service to determine whether an offer-in-compromise is adequate and should be accepted to resolve a dispute.

(2) Allowances for basic living expenses.--

(A) In general.--In prescribing guidelines under paragraph (1), the Secretary shall develop and publish schedules of national and local allowances designed to provide that taxpayers entering into a compromise have an adequate means to provide for basic living expenses.

(B) Use of schedules.--The guidelines shall provide that officers and employees of the Internal Revenue Service shall determine, on the basis of the facts and circumstances of each taxpayer, whether the use of the schedules published under subparagraph (A) is appropriate and shall not use the schedules to the extent such use would result in the taxpayer not having adequate means to provide for basic living expenses.

(3) Special rules relating to treatment of offers.--The guidelines under paragraph (1) shall provide that--

(A) an officer or employee of the Internal Revenue Service shall not reject an offer-in-compromise from a low-income taxpayer solely on the basis of the amount of the offer; and

(B) in the case of an offer-in-compromise which relates only to issues of liability of the taxpayer--

(i) such offer shall not be rejected solely because the Secretary is unable to locate the taxpayer's return

or return information for verification of such liability; and

(ii) the taxpayer shall not be required to provide a financial statement.

(d) Administrative Review.--The Secretary shall establish procedures--

(1) for an independent administrative review of any rejection of a proposed offer-in-compromise or installment agreement made by a taxpayer under this section or section 6159 before such rejection is communicated to the taxpayer; and

(2) which allow a taxpayer to appeal any rejection of such offer or agreement to the Internal Revenue Service Office of Appeals.

Regulations adopted pursuant to section 7122 set forth three grounds for the compromise of a liability:  (1) Doubt as to liability; (2) doubt as to collectibility; or (3) promotion of effective tax administration.  Sec. 301.7122-1, Proced. & Admin. Regs.  With respect to the third ground, paragraph (b)(3)(i) of the regulation allows for a compromise to be entered into to promote effective tax administration where collection in full could be achieved but would cause economic hardship.  Paragraph (c)(3)(i) sets forth factors that would support (but are not conclusive of) a finding of economic hardship.  With respect to the third ground, those regulations state:

(3) Compromises to promote effective tax administration.--(i) Factors supporting (but not conclusive of) a determination that collection would cause economic hardship within the meaning of paragraph (b)(3)(i) of this section include, but are not limited to--

(A) Taxpayer is incapable of earning a living because of a long term illness, medical condition, or disability, and it is reasonably foreseeable that taxpayer's financial resources will be exhausted providing for care and support during the course of the condition;

(B) Although taxpayer has certain monthly income, that income is exhausted each month in providing for the care of dependents with no other means of support; and

(C) Although taxpayer has certain assets, the taxpayer is unable to borrow against the equity in those assets and liquidation of those assets to pay outstanding tax liabilities would render the taxpayer unable to meet basic living expenses.

The regulation states that no compromise may be entered into if such compromise of liability would undermine compliance by the taxpayer with the tax laws. Sec. 301.7122-1(b)(3)(iii), Proced. & Admin. Regs. Paragraph (c)(3)(ii) then sets forth factors that support (but are not conclusive of) a determination that a compromise would undermine compliance with the tax laws. These factors include: (A) A taxpayer who has a history of noncompliance with the filing and payment requirements of the Internal Revenue Code; (B) a taxpayer who has taken deliberate action to avoid the payment of taxes; and (C) a taxpayer who has encouraged others to refuse to comply with the tax laws. Sec. 301.7122-1(c)(3)(ii), Proced. & Admin. Regs. The regulation continues:

(iii) The following examples illustrate the types of cases that may be compromised by the Secretary, at the Secretary's discretion, under the economic hardship provisions of paragraph (b)(3)(i) of this section:

Example 1.  The taxpayer has assets sufficient to satisfy the tax liability.  The taxpayer provides full time care and assistance to her dependent child, who has a serious long-term illness.  It is expected that the taxpayer will need to use the equity in his assets to provide for adequate basic living expenses and medical care for his child.  The taxpayer's overall compliance history does not weigh against compromise.

Example 2.  The taxpayer is retired and his only income is from a pension.  The taxpayer's only asset is a retirement account, and the funds in the account are sufficient to satisfy the liability.  Liquidation of the retirement account would leave the taxpayer without an adequate means to provide for basic living expenses. The taxpayer's overall compliance history does not weigh against compromise.

Example 3.  The taxpayer is disabled and lives on a fixed income that will not, after allowance of basic living expenses, permit full payment of his liability under an installment agreement.  The taxpayer also owns a modest house that has been specially equipped to accommodate his disability.  The taxpayer's equity in the house is sufficient to permit payment of the liability he owes.  However, because of his disability and limited earning potential, the taxpayer is unable to obtain a mortgage or otherwise borrow against this equity.  In addition, because the taxpayer's home has been specially equipped to accommodate his disability, forced sale of the taxpayer's residence would create severe adverse consequences for the taxpayer.  The taxpayer's overall compliance history does not weigh against compromise.

Under the regulations, a compromise may also be entered into to promote efficient tax administration if there are compelling public policy or equity considerations identified by the taxpayer.  Compromise is justified where, due to exceptional circumstances, collection would undermine public confidence that tax laws are being administered fairly. Sec.

301.7122-1(b)(3)(ii), Proced. & Admin. Regs.  Some examples where a compromise is allowed for purposes of public policy and equity are:  (1) A taxpayer who was hospitalized regularly for a number of years and was unable, at that time, to manage his financial affairs and (2) a taxpayer learns at audit that he was given erroneous advice and is facing additional taxes, penalties, and additions to tax.  Sec. 301.7122-1(c)(3)(iv), Proced. & Admin. Regs.  In addition to the regulations, detailed instructions concerning offers in compromise are contained in the Internal Revenue Manual, sections 5.8.  Relevant portions are as follows:

> Sec. 5.8.11.2.2 (05-15-2004)
> Public Policy or Equity Grounds
>
> 1.  Where there is no Doubt as to Liability (DATL), no Doubt as to Collectibility (DATC), and the liability could be collected in full without causing economic hardship, the Service may compromise to promote Effective Tax Administration (ETA) where compelling public policy or equity considerations identified by the taxpayer provide a sufficient basis for accepting less than full payment.  Compromise is authorized on this basis only where, due to exceptional circumstances, collection in full would undermine public confidence that the tax laws are being administered in a fair and equitable manner.  Because the Service assumes that Congress imposes tax liabilities only where it determines it is fair to do so, compromise on these grounds will be rare.
>
> 2.  The Service recognizes that compromise on these grounds will often raise the issue of disparate treatment of taxpayers who can pay in full and whose liabilities arose under substantially similar circumstances.  Taxpayers seeking compromise on this basis

bear the burden of demonstrating circumstances that are compelling enough to justify compromise notwithstanding this inherent inequity.

3. Compromise on public policy or equity grounds is not authorized based solely on a taxpayer's belief that a provision of the tax law is itself unfair. Where a taxpayer is clearly liable for taxes, penalties, or interest due to operation of law, a finding that the law is unfair would undermine the will of Congress in imposing liability under those circumstances.

> Example:
>
> The taxpayer argues that collection would be inequitable because the liability resulted from a discharge of indebtedness rather than from wages. Because Congress has clearly stated that a discharge of indebtedness results in taxable income to the taxpayer it would not promote Effective Tax Administration (ETA) to compromise on these grounds. See Internal Revenue Code (IRC) 61(a)(12).
>
> Example:
>
> In 1983, the taxpayer invested in a nationally marketed partnership which promised the taxpayer tax benefits far exceeding the amount of the investment. * * * [T]he IRS made a global settlement offer in which it offered to concede a substantial portion of the interest and penalties that could be expected to be assessed if the IRS's determinations were upheld by the court. The taxpayer rejected the settlement offer. After several years of litigation, the partnership level proceeding eventually ended in Tax Court decisions upholding the vast majority of the deficiencies asserted in the FPAA on the grounds that the partnership's activities lacked economic substance. The taxpayer has

> now offered to compromise all the penalties and interest on terms more favorable than those contained in the prior settlement offer, arguing that TEFRA [Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324] is unfair and that the liabilities accrued in large part due to the actions of the Tax Matters Partner (TMP) during the audit and litigation.  * * *

> Note:

> In both of these examples, the taxpayers are essentially claiming that Congress enacted unfair statutes and are arguing that the Service should use its compromise authority to rewrite those statutes based on a perception of unfairness. Compromise for that reason would not promote effective tax administration.  The compromise authority under Section 7122 is not so broad as to allow the Service to disregard or override the judgments of Congress. [1 Administration, Internal Revenue Manual (CCH), sec. 5.8.11.2.2, at 16,385-7 to 16,385-8.]

We need not detail in this opinion the complexities of the AMT imposed by sections 55 and 56 or the taxation of ISOs under sections 421 and 422.  Petitioners do not dispute the applicability of those sections or the computations under them. The tax liability in this case was based on petitioners' reporting on their Form 1040 for 2000.  Nonetheless, petitioners devote a substantial portion of their posthearing memorandum to arguing that:

> The Speltzes request for relief under the OIC Statute, from the unintended harm being caused them by the rote application of the AMT ISO Statute, does not put the IRS or this Court in a position where Section 7122 is undermining Congressional intent with respect to any other statute--including the AMT ISO Statute. Rather, based on their special circumstances in their particular situation, the rote and literal application of the internal revenue laws is imposing an impossible-

to-pay 220% tax rate or 11x the tax required of a similarly situated taxpayer--an unintended result not consistent with the legislative purpose of Congress for any internal revenue law.  In such a special case, Congress intended that the OIC Statute would operate to step in and provide relief from this unintended and unfair tax liability arising from unintended results arising from the literal application of the internal revenue laws (in this case, the AMT ISO Statute).

Petitioners contend that there was an abuse of discretion because:

The IRS failed to consider (or if it did consider it failed to properly consider), under the principles and processes laid out in Section 7122, corresponding regulations 26 CFR 301.7122, and the corresponding IRM provisions, the special circumstances raised by the Speltzes in their offer in compromise.

Petitioners argue that "under their special circumstances the tax liability being imposed on them is unfair and inequitable, a situation for which Congress has fashioned a remedy in the law--Section 7122."  The crux of petitioners' position is that section 7122 "trumps" the literal application of statutes imposing a tax in their situation and that, therefore, it was an abuse of discretion by the Appeals Office not to accept their offer in compromise.

Respondent, on the other hand, contends that the Appeals officer correctly applied the statute, the regulations, and the Internal Revenue Manual provisions.  For the reasons explained below, we agree with respondent.

The unfortunate consequences of the AMT in various circumstances have been litigated since shortly after the

adoption of the AMT.  In many different contexts, literal application of the AMT has led to a perceived hardship, but challenges based on equity have been uniformly rejected.  See, e.g., <u>Alexander v. Commissioner</u>, 72 F.3d 938 (1st Cir. 1995), affg. T.C. Memo. 1995-51; <u>Okin v. Commissioner</u>, 808 F.2d 1338 (9th Cir. 1987), affg. T.C. Memo. 1985-199; <u>Warfield v. Commissioner</u>, 84 T.C. 179 (1985); <u>Huntsberry v. Commissioner</u>, 83 T.C. 742, 747-753 (1984); <u>Prosman v. Commissioner</u>, T.C. Memo. 1999-87; <u>Klaassen v. Commissioner</u>, T.C. Memo. 1998-241, affd. without published opinion 182 F.3d 932 (10th Cir. 1999).

In <u>Kenseth v. Commissioner</u>, 259 F.3d 881, 885 (7th Cir. 2001), affg. 114 T.C. 399 (2000), the Court of Appeals for the Seventh Circuit commented:

> it is not a feasible judicial undertaking to achieve global equity in taxation * * * especially when the means suggested for eliminating one inequity (that which Kenseth argues is created by the alternative minimum income tax) consists of creating another inequity (differential treatment for purposes of that tax of fixed and contingent legal fees).  And if it were a feasible judicial undertaking, it still would not be a proper one, equity in taxation being a political rather than a jural concept.  * * *

Most recently, in <u>Commissioner v. Banks</u>, 543 U.S. ___, 125 S.Ct. 826 (2005), the U.S. Supreme Court emphasized that the issue of the effect of the AMT on cases such as <u>Kenseth v. Commissioner</u>, <u>supra</u>, involving the deductibility of attorney's fees, has partially been addressed by Congress.  We believe that here, too, the solution must be with Congress.

Petitioners have submitted materials from congressional, Taxpayer Advocate, and bar association sources, dealing with a widespread perception that application of the AMT to ISOs is unfair and should be the subject of redress. Respondent argues that petitioners did not raise efficient tax administration as a ground in their original offer in compromise and that we should not consider materials beyond the administrative record. The Court has indicated that we are not confined to the administrative record. Robinette v. Commissioner, 123 T.C. 85, 94-104 (2004). However, most of the material that petitioners attached to their filings is not part of the administrative record, is not admissible evidence, and was in large part generated subsequent to the notice of determination that is the basis of this case. Such material does not show that there was an abuse of discretion by the Appeals officer when the notice of determination was sent on August 12, 2003. See Sego v. Commissioner, 114 T.C. 604, 612 (2000).

Petitioners' materials, in any event, could support arguments both for and against petitioners' position. Petitioners assert that those materials show "public policy". In our view, however, those materials show that Congress is well aware of the claimed inequities resulting from the application of the AMT and has, so far, declined to act. In the absence of congressional action, we cannot discern public policy from the

materials tendered by petitioners.  Moreover, the materials submitted by petitioners show that their situation is, unfortunately, not unique.

We do not discern in section 7122 an intent of Congress to override application of specific provisions of the tax laws in every instance in which the liability is perceived to be unfair or inequitable.  As the Court of Appeals for the Seventh Circuit observed in Kenseth v. Commissioner, supra, this is not a feasible judicial function.  A fortiori, individual revenue officers and Appeals officers, carrying out their respective functions in the IRS collection process, cannot be expected to engage in the type of statutory interpretation urged on us by petitioners or to nullify unfortunate consequences of the tax laws on a case-by-case basis.  The terms of section 7122, the regulations adopted under it, and the Internal Revenue Manual are consistent with the experience and expertise of IRS personnel in evaluating financial circumstances.  Petitioners do not argue that the regulations or the Internal Revenue Manual provisions are invalid.  They claim that they were not followed.  But terms such as "promotion of effective tax administration", "special circumstances", and "compelling public policy or equity considerations" have a narrower meaning than that urged by petitioners, and the explanations of those terms in the

regulations and in the Internal Revenue Manual are not unreasonable.

Unlike the examples set forth under section 301.7122-1(c), Proced. & Admin. Regs., petitioners do not claim illness or a medical condition or disability; they do not have income that is exhausted providing for the care of dependents; and they have sufficient income to meet "basic living expenses". Petitioners' hardship argument is essentially that the tax liability is disproportionate to the value that they received from the ISOs and that they have already been forced to change their lifestyle unreasonably. Although we sympathize with their situation, this type of hardship is not unique.

Petitioners argue that the AMT imposed on their exercise of ISOs is a "prepayment" of tax on value that they never received. Under the statutory scheme, however, the tax imposed at the time of exercise of ISOs is a deferred tax on a form of compensation that petitioners received at an earlier time. See Commissioner v. LoBue, 351 U.S. 243 (1956). As explained in Luckman v. Commissioner, 418 F.2d 381, 384 (7th Cir. 1969), revg. and remanding on other grounds 50 T.C. 619 (1968), stock options "represent a form of compensation paid to employees in connection with successful present and future business performance. They constitute a particularly rewarding form of bonus." See generally 1 Mertens, Law of Federal Income Taxation, sec. 601

(2005 rev.).  Because of sections 421(a) and 422, regular tax at ordinary rates that would normally be imposed on compensation is not imposed on the receipt or exercise of ISOs.  See sec. 83(a), (e)(1).  The offset, however, is that ISOs are treated as "tax preference items" for AMT purposes in section 56(b)(3).

In addition to affecting the time of taxation, the complexity of statutes applicable to stock options involves differences between taxation at ordinary income rates and capital gains rates.  See generally Luckman v. Commissioner, supra at 386-387.  Accepting petitioners' position would result in nullification of a portion of the statutory scheme by administrative or judicial action.  We cannot conclude that section 7122 gives the Court a license to make adjustments to complex tax laws on a case-by-case basis.  Cf. Rank v. United States, 345 F.2d 337, 344-345 (5th Cir. 1965) (describing other circumstances in which "the attention of Congress was once again focused on this highly complex, if not controversial, question of employee stock options").  Moreover, we cannot conclude that it is an abuse of discretion for the Appeals officer to decline to do so.  In this case, we conclude that the Appeals officer correctly applied the provisions of the regulations and of the Internal Revenue Manual, specifically those portions cautioning against granting relief based on inequity where to do so would undermine congressional intent.

The Appeals officer considered and adjusted the financial information submitted by petitioners and concluded that petitioners could pay the balance of their tax liability by use of an installment agreement.  See generally Orum v. Commissioner, 123 T.C. 1, 13-14 (2004).  Neither the information provided to the Appeals officer nor that provided to the Court in this case shows that it was not reasonable for the Appeals officer to conclude that petitioners have the ability to pay over time the balance of the tax liability.  Petitioners contend that they should not be required to pay the full amount.  We are not unsympathetic to the burdens and lifestyle changes that petitioners have and may suffer as a result of their tax liability.  Petitioners have not contended or shown, however, any invalidity in the Appeals officer's determination of their basic living expenses as that term is used in section 7122. Petitioners seek to have the Court redefine "hardship", "special circumstances", and "efficient tax administration" in a manner different from that set forth in the regulations and in the Internal Revenue Manual.

There is a dispute between the parties with respect to the individual adjustments used by the Appeals officer in determining that petitioners could pay the remaining tax liability under an installment plan.  Respondent has suggested some revised computations and a remand for further consideration of

petitioners' offer in compromise if the motion for summary judgment is denied. Petitioners have repudiated this suggestion and asked us to decide this case on the arguments presented. In view of petitioners' position, for purposes of this case, that they should not be required to pay any more than the amount that they offered, differences as to the calculation of their ability to pay installments are not material and do not preclude resolution of this case on summary judgment. See Rule 121(b). We are not in a position to determine the amount or duration of any installments that petitioners could or should be required to pay. The only issue before us is whether there was an abuse of discretion in refusing the offer in compromise in the amount of $4,457 and concluding that the lien filed by the IRS should remain in place. As respondent points out, any levy on particular assets of petitioners that the IRS proposes to pursue in the future will also require notice and an opportunity to be heard under section 6320 or 6330. Petitioners may submit another offer in compromise. Petitioners' income and expenses may change. We conclude, however, that there was no abuse of discretion in declining to accept petitioners' offer dated November 2, 2001, and continuing the lien in effect.

Order and Decision will

be entered for respondent.