T.C. Summary Opinion 2006-63

UNITED STATES TAX COURT

JAMES WELDON AARON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14787-04S.           Filed April 24, 2006.

James Weldon Aaron, pro se.

<u>Monica J. Miller</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of sections 6330(d) and 7463 of the
Internal Revenue Code in effect when the petition was filed.  The
decision to be entered is not reviewable by any other court, and
this opinion should not be cited as authority.  Unless otherwise
indicated, all subsequent section references are to the Internal
Revenue Code in effect at relevant times.

This proceeding arises from a petition for judicial review filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) sent to petitioner on July 12, 2004. The issue for decision is whether respondent abused his discretion in sustaining a notice of Federal tax lien filed against petitioner.

## Background

Some of the facts have been stipulated, and they are so found. The record consists of the stipulation of facts with attached exhibits, an additional exhibit introduced at trial, and the testimony of petitioner. At the time of filing the petition, petitioner resided in Sebring, Florida.

Respondent made assessments against petitioner for income taxes, related penalties, and interest for the taxable years 1994, 1995, 1996, and 2002. Respondent sent a notice and demand for payment for each of the years at issue, but petitioner failed to remit payment.

In February 2003, petitioner submitted an offer-in-compromise (OIC), in which he offered to pay $3,000 to compromise his tax liabilities for the taxable years 1994, 1995, and 1996.[1] The OIC was based on doubt as to collectibility and promotion of effective tax administration. In a written statement attached to

---

[1] The OIC also included the taxable years 1992 and 1993 but did not include the taxable year 2002. The taxable years 1992 and 1993 are not before the Court.

the OIC, petitioner claimed he was unable to pay his tax liabilities because he:  (1) Earned $7.35 an hour as a customer service representative; (2) had a wife[2] and three children; (3) had a monthly car payment; and (4) contributed to the support and maintenance of his then-94-year-old mother.

Respondent processed petitioner's OIC and assigned it to an offer specialist.  The offer specialist sent petitioner a letter in July 2003 requesting, among other things, "Information to substantiate current income for yourself and your spouse (W2s, 1099s, etc)".  The letter states in part:

> If you or your spouse are involved with any businesses as an officer, a partner, an owner, or an investor, provide a copy of the last three (3) Federal income tax reports, if other than Form 1040; schedule of disbursements made to you, including loans, dividends, interest, wages for the past three (3) years; names of officers directors, and stockholders.

Petitioner and the offer specialist exchanged correspondence over the next several months.  At some point during that time, respondent learned that petitioner was operating a paralegal business that was not mentioned in his OIC.  On February 11, 2004, the offer specialist asked petitioner to provide a statement of his income from the paralegal business signed under penalty of perjury.  Petitioner refused to provide the statement. At or about the same time, the offer specialist determined that petitioner's offer of $3,000 was insufficient because the total

---

[2]  Petitioner's wife is not a party to this case.

value of his real property interests exceeded his unpaid tax liabilities.

Respondent returned the OIC to petitioner on February 27, 2004, with a letter that states: "We requested substantiation of your financial information. We have not received all of the required information. Therefore, we have closed your offer." Respondent filed a notice of Federal tax lien against petitioner on March 9, 2004, for the taxable years 1994, 1995, 1996, and 2002. The total amount reflected on the notice of Federal tax lien was $4,619.60. Respondent issued a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 to petitioner on March 12, 2004.

Petitioner timely submitted a Form 12153, Request for a Collection Due Process Hearing. The Form 12153 states only that petitioner wished to continue pursuing an OIC. Petitioner and respondent's settlement officer held a face-to-face hearing in May 2004. Petitioner did not dispute his underlying liabilities or raise a spousal defense. The settlement officer informed petitioner that his offer of $3,000 was insufficient because of the total value of his real property interests.[3] The settlement

_____

[3] In his OIC, petitioner indicated he owned four parcels of real property. The notice of determination, however, states that petitioner and the offer specialist "reviewed the nine parcels of real property in which * * * [petitioner] ha[s] an interest." A notarized document that petitioner signed on Feb. 16, 2004, also indicates that he had interests in nine parcels of real property.

(continued...)

officer suggested an installment agreement because petitioner lacked liquid assets with which to pay his tax liabilities. Petitioner was not willing to enter into an installment agreement; instead, he wanted to discharge his liabilities through a lump-sum payment as part of an OIC.

Petitioner and the settlement officer spoke by telephone in the weeks following the face-to-face hearing. The settlement officer sent petitioner a proposed installment agreement that called for monthly payments of $140 until petitioner's liabilities were paid in full. Petitioner did not sign the proposed installment agreement. On July 12, 2004, respondent issued a notice of determination to petitioner sustaining the filing of the notice of Federal tax lien. The notice of determination states that the "requirements of various applicable legal and administrative procedures have been met". It also states that the notice of Federal tax lien was filed "since the unpaid balance of assessment was $5,000 or more [Internal Revenue Manual 5.12.1.13-Filing Guidelines]".

## Discussion

Section 6321 imposes a lien in favor of the United States on all property and rights to property of a person when a demand for the payment of the person's liability for taxes has been made and

---

[3](...continued)
The discrepancy has not been explained.

the person fails to pay those taxes.  Such a lien arises when an assessment is made.  Sec. 6322.  Section 6323(a) requires the Secretary to file a notice of Federal tax lien if the lien is to be valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor.  Lindsay v. Commissioner, T.C. Memo. 2001-285, affd. 56 Fed. Appx. 800 (9th Cir. 2003).

Section 6320 provides that a taxpayer shall be notified in writing by the Secretary of the filing of a notice of Federal tax lien and provided with an opportunity for an administrative hearing.  An administrative hearing under section 6320 is conducted in accordance with the procedural requirements of section 6330.  Sec. 6320(c).  At the administrative hearing, a taxpayer is entitled to raise any relevant issue relating to the unpaid tax, including a spousal defense or collection alternatives such as an offer-in-compromise or an installment agreement.  Sec. 6330(b) and (c)(2); sec. 301.6320-1(e)(1), Proced. & Admin. Regs.  A taxpayer also may challenge the existence or amount of the underlying tax liability, including a liability reported on the taxpayer's original return, if the taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to

dispute such tax liability." Sec. 6330(c)(2)(B); see also Urbano v. Commissioner, 122 T.C. 384, 389-390 (2004); Montgomery v. Commissioner, 122 T.C. 1, 9-10 (2004).

At the conclusion of the hearing, the Appeals officer must determine whether and how to proceed with collection, taking into account, among other things, collection alternatives proposed by the taxpayer and whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary. See sec. 6330(c)(3).

Section 6330(d) provides for judicial review of the administrative determination in the Tax Court or a Federal District Court, as may be appropriate. Where the validity of the underlying tax liability is properly at issue, the Court will review the matter de novo. However, where the validity of the underlying tax liability is not properly at issue, the Court will review the Commissioner's administrative determination for abuse of discretion. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

Petitioner does not seek to challenge his underlying tax liabilities. We therefore review respondent's determination for abuse of discretion. See Lunsford v. Commissioner, 117 T.C. 183, 185 (2001); Goza v. Commissioner, supra. We generally consider only arguments, issues, and other matters that were raised at the

administrative hearing or otherwise brought to the attention of the Appeals Office. Magana v. Commissioner, 118 T.C. 488, 493 (2002); sec. 301.6320-1(f)(2), Q&A-F5, Proced. & Admin. Regs.

The sole collection alternative petitioner proposed was an OIC.[4] Section 7122(a) authorizes the Secretary to compromise any civil case arising under the internal revenue laws. As is relevant here, grounds for compromise of a liability include doubt as to collectibility or promotion of effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs.

Before discussing each of these grounds, we address respondent's contention, raised for the first time in his pretrial memorandum, that petitioner's failure to pay his 2002 tax liability rendered him noncompliant with Federal tax laws. The Court has held that where a taxpayer is not currently in compliance with Federal tax laws, a determination that the taxpayer is not entitled to an OIC does not constitute abuse of discretion. Rodriquez v. Commissioner, T.C. Memo. 2003-153; see also Orum v. Commissioner, 412 F.3d 819, 821 (7th Cir. 2005), affg. 123 T.C. 1 (2004). The Court also has held, however, that

---

[4] Petitioner's OIC does not address the taxable year 2002. It is unclear whether he later proposed an OIC as a collection alternative for that year. On the basis of our discussion and resolution of the issue for decision, infra, the result in this case will not change if we find that petitioner offered to compromise his 2002 tax liability. We therefore assume, without deciding, that the issue of an OIC for the taxable year 2002 was raised and is properly before the Court.

we generally do not consider an issue that is raised for the first time at trial.  See, e.g., <u>Foil v. Commissioner</u>, 92 T.C. 376, 418 (1989), affd. 920 F.2d 1196 (5th Cir. 1990); <u>Markwardt v. Commissioner</u>, 64 T.C. 989, 997 (1975).  Respondent has offered no explanation for not raising the issue of petitioner's noncompliance earlier.  We do not consider this issue, nor does it affect the outcome of this case.

<u>Doubt as to Collectibility</u>

The Secretary may compromise a tax liability for doubt as to collectibility when "the taxpayer's assets and income are less than the full amount of the assessed liability."  Sec. 301.7122-1(b)(2), Proced. & Admin. Regs.  Respondent determined that the total value of petitioner's interests in real property exceeded the amount of his unpaid tax liabilities.  At trial, petitioner stated he "had no problem" with respondent's determination with respect to his real property interests.  He also conceded that he had sufficient assets to pay his tax liabilities for the years at issue.  Accordingly, he is not entitled to compromise his tax liabilities on the basis of doubt as to collectibility.

<u>Effective Tax Administration</u>

The Secretary may compromise a liability on the ground of effective tax administration when:  (1) Collection of the full liability will create economic hardship; or (2) exceptional

circumstances exist such that collection of the full liability would undermine public confidence that the tax laws are being fairly and equitably administered. Speltz v. Commissioner, 124 T.C. 165, 172-174 (2005); sec. 301.7122-1(b)(3), Proced. & Admin. Regs.

1. Economic Hardship

Factors supporting (but not conclusive of) a determination that collection would cause economic hardship include, but are not limited to:

> (A) Taxpayer is incapable of earning a living because of a long term illness, medical condition, or disability, and it is reasonably foreseeable that taxpayer's financial resources will be exhausted providing for care and support during the course of the condition;
>
> (B) Although taxpayer has certain monthly income, that income is exhausted each month in providing for the care of dependents with no other means of support; and
>
> (C) Although taxpayer has certain assets, the taxpayer is unable to borrow against the equity in those assets and liquidation of those assets to pay outstanding tax liabilities would render the taxpayer unable to meet basic living expenses.

Sec. 301.7122-1(c)(3)(i), Proced. & Admin. Regs.

Petitioner does not contend that he has a long-term illness, medical condition, or disability. Nor does he claim that borrowing against the equity in his real property interests would render him unable to meet basic living expenses. Although petitioner contributes to the support of his family, he has

neither argued nor demonstrated that his monthly income is exhausted caring for them or that they have no other means of support. Accordingly, petitioner has not shown that collection of the full liability would cause him economic hardship.

2. Compelling Public Policy or Equity Considerations

Petitioner argues that his due process rights were violated when respondent's offer specialist asked him to provide a sworn statement of his income from the paralegal business. According to petitioner, the offer specialist requested the statement only after informing him that she would reject his OIC because of the real property interests he owned. Petitioner claims he asked the offer specialist to make her request in writing, but she refused. Petitioner contends that the offer specialist's actions were "arbitrary and capricious" and "denied * * * [him] due process". Although petitioner's argument is vague, we interpret his position to be that his OIC should have been accepted on the basis of public policy or equity considerations.

The Secretary may enter into a compromise to promote effective tax administration where compelling public policy or equity considerations identified by the taxpayer provide a sufficient basis for compromising the liability. Sec. 301.7122-1(b)(3)(ii), Proced. & Admin. Regs. A compromise will be justified only where, because of exceptional circumstances, collection of the full liability would undermine public

confidence that the tax laws are being administered in a fair and equitable manner.  A taxpayer proposing a compromise on the basis of effective tax administration will be expected to demonstrate circumstances that justify a compromise even though a similarly situated taxpayer may have paid his liability in full.  Id. Examples of where a compromise is allowed for purposes of public policy and equity include:  (1) A taxpayer who was hospitalized regularly for a number of years and was unable to manage his financial affairs incurs significant tax liabilities, penalties and interest; and (2) a taxpayer learns at audit that he received erroneous advice from the IRS and, as a result, is facing additional taxes, penalties, and additions to tax.  Speltz v. Commissioner, supra at 173; sec. 301.7122-1(c)(3)(C)(iv), Proced. & Admin. Regs.

Petitioner has identified no public policy or equity considerations that would justify a compromise on the basis of effective tax administration.  The Government may request additional information from a taxpayer after an OIC is accepted for processing.  Sec. 301.7122-1(d)(2), Proced. & Admin. Regs. The taxpayer's refusal to provide the requested information within a reasonable time is grounds for returning the OIC.  Id. Petitioner failed to mention the paralegal business in his OIC. When the offer specialist learned of the existence of this business, she was entitled to request additional information,

which she did in July 2003 and February 2004.  Petitioner's refusal to provide the requested information was grounds for returning his OIC.  Accordingly, petitioner has not shown that compromising his tax liabilities would promote effective tax administration.

Applicable Law and Administrative Procedure

Petitioner's final argument is that respondent failed to comply with section 6330(c).  This section provides that the officer conducting the administrative hearing must verify that the requirements of applicable law and administrative procedure have been met.  For example, the hearing officer must verify that the taxpayer was properly issued a notice of Federal tax lien, which must include the amount of unpaid tax, the taxpayer's right to request an administrative hearing, the administrative appeals available to the taxpayer, and the procedures relating to the release of liens.  Sec. 6320(a)(1)-(3); see also Anderson v. Commissioner, T.C. Memo. 2003-112.

Petitioner's sole contention with respect to section 6330(c) is that the Internal Revenue Manual (IRM) prohibits the filing a notice of Federal tax lien if the taxpayer's unpaid balance of assessment is under $5,000.  The total amount reflected on the notice of Federal tax lien that respondent filed against petitioner was $4,619.60.  Thus, petitioner argues, the settlement officer erred in determining that petitioner's "unpaid

balance of assessment was $5,000 or more" and thereby violated section 6330(c).  We disagree.

IRM sec. 5.12.2.8.2 (March 1, 2004)[5] states that a notice of Federal tax lien generally should not be filed if the taxpayer's aggregate unpaid balance of assessment is less than $5,000.  It also states, however, that a notice "may be filed when, in the judgment of the revenue officer, it is in the best interest of the government to record the lien" and a group manager approves. IRM sec. 5.12.2.8.2(1)(a).  Thus, there is no absolute prohibition on filing a notice of Federal tax lien if the unpaid balance of assessment is less than $5,000.

Even if respondent did fail to comply with the provisions of the IRM, those provisions govern only the internal affairs of the Internal Revenue Service; they do not have the force and effect of law.  Valen Manufacturing Co. v. United States, 90 F.3d 1190, 1194 (6th Cir. 1996); United States v. Horne, 714 F.2d 206, 207 (1st Cir. 1983); see also Miller v. Commissioner, 114 T.C. 184, 195 (2000) ("The authoritative sources of Federal tax law are the statutes, regulations, and judicial decisions"), affd. sub nom. Lovejoy v. Commissioner, 293 F.3d 1208 (10th Cir. 2002).  The procedures in the IRM do not confer rights on taxpayers.  United

---

[5]  The notice of determination refers to IRM sec. 5.12.1.13 (Apr. 30, 2002), which was replaced by IRM sec. 5.12.2.8.1 and 5.12.2.8.2 (Mar. 1, 2004).  For purposes of this opinion, there is no substantive difference between the older and newer IRM provisions.

States v. Horne, supra at 207; United States v. Mapp, 561 F.2d 685, 690 (7th Cir. 1977).  As the Court of Appeals for the Eleventh Circuit has stated:  "The IRS operating procedures contained in the IRM do not delineate substantive rights of individuals but instead simply establish intra-agency operating procedures.  As such, they are a species of rule that is not judicially enforceable against the agency."  First Alabama Bank, N.A. v. United States, 981 F.2d 1226, 1230 (11th Cir. 1993).  Accordingly, petitioner's argument fails.

On the basis of our review of the record, we conclude that respondent satisfied the requirements of section 6330(c) and did not abuse his discretion in sustaining the notice of Federal tax lien filed against petitioner.  Respondent's determination therefore is sustained.  In reaching our holding, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered for respondent.