T.C. Memo. 2006-179

UNITED STATES TAX COURT

CHI WAI, Petitioner <u>v</u>. COMMISSIONER OF
INTERNAL REVENUE, Respondent

Docket No. 19316-04L.            Filed August 29, 2006.

        P incurred alternative minimum tax liability as a
result of her exercise of incentive stock options in
2000.  The stock declined precipitously in value after
the date of exercise.  P partially paid her year 2000
tax liability through withholding, estimated tax
payments and application of a small credit, and
submitted an offer-in-compromise for the unpaid
balance.  The IRS rejected the offer-in-compromise and
notified P of its intent to levy on P's property.
<u>Held</u>:  it was not an abuse of discretion to reject P's
offer.  IRS may proceed with the levy. <u>Speltz v.
Commissioner</u>, 124 T.C. 165 (2005), affd. 454 F.3d 782
(8th Cir. 2006), followed.

<u>John S. Harper</u>, for petitioner.

<u>Cleve Lisecki</u>, for respondent.

MEMORANDUM OPINION

NIMS, <u>Judge</u>:  Petitioner petitioned the Court under section 6330(d)[1] to review the determination of the Internal Revenue Service's Office of Appeals sustaining a proposed levy on petitioner's property related to petitioner's year 2000 Federal income tax liability.  Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect at relevant times.  Petitioner resided in Virginia at the time she filed her petition.

<u>Background</u>

This case was submitted fully stipulated.  The facts as stipulated are so found.

Petitioner filed her Federal income tax return for 2000 on the basis of married filing separate.  Petitioner's reported tax liability included an alternative minimum tax liability (AMT) of $776,447, and "regular" tax in the amount of $10,100, bringing her total tax liability to $786,547.  Her return reported Federal income tax withheld of $11,080, and estimated tax payments of $450,000, leaving a balance of tax due in the amount of $325,467.

---

[1]The petition refers initially to sec. 6330(c); however, this appears to be an inadvertence, since sec. 6330(d) is the statutory provision that provides for judicial review of a determination by the Internal Revenue Service Office of Appeals.

Petitioner made no remittance with the return, and except for a $300 credit on December 3, 2001, petitioner made no additional payments.

Respondent accepted petitioner's return as filed and in due course assessed the $786,547 tax due shown on the return. In addition, respondent assessed a $174,480.07 late filing penalty under section 6651(a)(1), and a $31,018.68 late payment penalty under section 6651(a)(2). Subsequently, respondent abated $101,250 of the late filing penalty, and $13,122.50 of the late payment penalty.

Petitioner was employed as an engineer by PMC-Sierra (PMCS) during 2000. During the year, petitioner exercised several incentive stock options (ISOs) covering PMCS shares having a value of $2,910,251 on the exercise date. Petitioner's total exercise price under all the ISOs was $183,263, so that the value of the shares on the date of exercise exceeded the exercise price by $2,726,988.

Petitioner's exercise of the ISOs encompassed an attendant "ISO spread", described below, within the purview of the AMT system. See sec. 56(b)(3). The beneficial provisions of sections 421(a) and 83(e) are superseded for purposes of computing income adjustments in the AMT regime. As a result, the pertinent AMT income recognition event for incentive stock option transactions occurs upon the holder's exercise of the option.

The aforementioned ISO spread represents the differential between the exercise price and the fair market value of the underlying stock as of the date an option is exercised.

The above-described gain, although excludable from petitioner's year 2000 taxable income pursuant to section 421(a), was includable in her alternative minimum taxable income (AMTI) pursuant to section 56(b)(3). Petitioner did not sell any of the shares in 2000 and properly reported the $2,726,988 gain on her return for that year.

The value of petitioner's PMCS stock purchased under the ISOs fell dramatically after the ISOs were exercised in 2000 but before the stock was sold in 2001, so that the actual selling price over petitioner's exercise price under the ISOs produced for regular tax purposes a gain that was only a small fraction of the AMT gain required to be reported on petitioner's 2000 Federal income tax return, and a tax that was also substantially less than the $786,547 tax which petitioner reported on her 2000 return. Cf. Merlo v. Commissioner, 126 T.C. 205, 209-210 (2006).

On December 20, 2001, petitioner submitted a Form 656, Offer in Compromise (OIC), which stated as the reasons Doubt as to Liability, Doubt as to Collectibility, and Effective Tax Administration. The amount of the offer was left blank, to which respondent's "offer unit" inserted $1 to permit the Internal Revenue Service (IRS) to begin review of the OIC. Petitioner's

offer was temporarily put on hold "pending a review of the ISO rulings by National Office." Petitioner was later advised by respondent's offer specialist that "the Effective Tax Administration offer is not feasible as it is used [only] when the net realizable equity [in the taxpayer's assets] exceeds the tax amount", which was not the case here.

On May 1, 2003, petitioner submitted an amended offer-in-compromise (amended OIC), which contained only doubt as to collectibility and effective tax administration (ETA) as reasons for the offer, and again contained no dollar amount, which respondent treated as $1, and again rejected. Petitioner then filed a protest, and respondent's settlement officer in general appeals programs sustained the rejection of the amended OIC.

On May 20, 2004, respondent mailed to petitioner a Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing, in response to which petitioner requested a hearing (Appeals hearing). In the request, petitioner asserted that respondent's rejection of petitioner's OIC was an abuse of discretion.

On September 8, 2004, respondent advised petitioner that the Appeals Office had sustained respondent's Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing for the

2000 year.  Respondent's Final Notice contained the following

"Summary of Determination" (Summary), quoted here in its

entirety:

Summary of Determination

Although we addressed each of your issues we could not
reach an agreement.  Based on the case file the issuing
of the Final Notice - Notice of Intent to Levy and
Notice Of Your Right To A Hearing is sustained.

As is apparent, the Summary does not disclose the issues to

which it refers.  However, on November 8, 2003, respondent's

settlement officer had issued an Appeals Case Memorandum which

explained in detail respondent's reasons for rejecting

petitioner's OIC, as follows:

**SUMMARY AND RECOMMENDATION**

The taxpayer is seeking to compromise, under the
authority of Section 7122 of the Internal Revenue Code,
and as amended by the Restructuring and Reform Act of
1998 to include provisions under Effective Tax
Administration (ETA), the unpaid taxes plus all
statutory additions, relating to the Individual Income
Tax Return, Form 1040, filed Married filing Separate
for the calendar year ending December 31, 2000.

Mrs. Wai's Offer was submitted solely on the premise of
the inequity and unfairness of the assessment of
Alternative Minimum Tax (AMT) that she was subject to
for tax year 2000 as a result of exercising stock
options.  Her offer, based on ETA, focused on the fact
that **had** she filed jointly with her husband for this
year, the amount of her AMT tax would not only have
been significantly less, but it would have essentially
been paid in full.  Her Power of Attorney, John S.
Harper, therefore reasoned that the provisions of IRC
6015(f) should be applied in consideration of the
Offer.

The rejection of this Offer has been sustained by Appeals for the following reasons:

1.  It is the current position of Appeals that Offers submitted based solely on the merits of the ISO-AMT issue, do NOT qualify for consideration under the principles of ETA. Currently there is no provision in the law that allows consideration of ETA-OIC's due to AMT on stock options. Our position remains that Congress must enact a change in the law with respect to the AMT on stock options before we will give consideration to the merits of an offer submitted under ETA based solely on this issue. We will NOT set precedent at this time with reviewing or accepting ETA-OIC's based on the ISO-AMT issue until a change in the law has been made. Appeals also has no authority at this time to suspend any of these ETA-OIC's currently in inventory until such time, if any, that a change in the law is made. And secondly,

2.  Mr. Harper's request to have the ETA-OIC viewed in light of the provisions of IRC 6015(f) is flawed. The fact that **if** the taxpayer's[sic] had filed jointly would have significantly reduced the amount of Mrs. Wai's AMT tax does not negate the fact that they **voluntarily** chose to file separately for tax year 2000, thus creating a larger tax burden for themselves individually. As previously discussed with Mr. Harper, the Wai's[sic] still have the ability to amend their 2000 returns by filing a joint return, and thus reducing the amount of AMT tax that Mrs. Wai is asking the IRS to compromise. In addition, Mrs. Wai would then be in a position to request relief under the Innocent Spouse provisions, in which Mr. Harper believes she would prevail.

> Appeals will not consider the principles under IRC 6015(f) in determining whether or not the ETA-OIC should be accepted from Mrs. Wai.

The offer is being rejected without further consideration by Appeals at this time.

During the pendency of petitioner's CDP matter before respondent's settlement officer, petitioner's counsel was in contact with other Government officials (of which he kept the Settlement Officer and her superior informed) in an attempt to obtain collateral relief for petitioner from her AMT liability. At various times, counsel was in contact with the National Taxpayer Advocate's Office, and with the Assistant Secretary of Treasury for Tax Policy.

By letter dated October 28, 2004, Commissioner of Internal Revenue Mark W. Everson advised Senators Grassley and Baucus that, as of that date, no formal guidance had been issued by the IRS to its employees specifically pertaining to the compromise of liabilities attributable to the AMT arising from the exercise of ISOs.

## Discussion

The facts in this case giving rise to the AMT almost exactly parallel those of Speltz v. Commissioner, 124 T.C. 165 (2005), affd. 454 F.3d 782 (8th Cir. 2006). In each case, the taxpayer exercised ISOs during the year 2000, and reported on the respective Federal tax returns, for purposes of the AMT, an

excess of AMT income over "regular tax income" of very substantial amounts. The value of the taxpayer's stock in each case dropped precipitously after the exercise, and the amount realized on the later sale of the stock after year 2000 was a small fraction of the AMTI reported on the respective year 2000 returns, and also a small fraction of the AMT in each case. The taxpayers in each case thus suffered substantial economic losses as a result of what might be called phantom income which they were required to report in 2000 but never in the usual sense actually received.

Section 7122(c)(1) and (2) provides:

SEC. 7122(c). Standards for Evaluation of Offers.--

(1) In general.--The Secretary shall prescribe guidelines for officers and employees of the Internal Revenue Service to determine whether an offer-in-compromise is adequate and should be accepted to resolve a dispute.

(2) Allowances for basic living expenses.--

(A) In general.--In prescribing guidelines under paragraph (1), the Secretary shall develop and publish schedules of national and local allowances designed to provide that taxpayers entering into a compromise have an adequate means to provide for basic living expenses.

(B) Use of schedules.--The guidelines shall provide that officers and employees of the Internal Revenue Service shall determine, on the basis of the facts and circumstances of each taxpayer, whether the use of the schedules published under subparagraph (A) is appropriate and shall not use the schedules

> to the extent such use would result in the taxpayer not having adequate means to provide for basic living expenses.

Regulations adopted pursuant to section 7122 set forth three grounds for the compromise of a liability:  (1) Doubt as to liability; (2) doubt as to collectibility; or (3) promotion of effective tax administration.  Speltz v. Commissioner, supra at 172; sec. 301.7122-1, Proced. & Admin. Regs.  In her petition, petitioner asserts that there was an abuse of discretion as to all three grounds, although she pursued only promotion of ETA at the CDP hearing.

Generally, we may consider only those issues that the taxpayer raised during a section 6330 hearing.  Sapp v. Commissioner, T.C. Memo. 2006-104; sec. 301.6330-1(f)(2), Q&A-F5, Proced. & Admin. Regs.; see also Magana v. Commissioner, 118 T.C. 488, 493 (2002).  Respondent asserts that petitioner did not raise the issue of doubt as to liability at her Appeals hearing, which petitioner disputes.  In any event, petitioner has failed to aver facts or legal argument sufficient to show error in respondent's assessment.  See Poindexter v. Commissioner, 122 T.C. 280, 284-285 (2004), affd. 132 Fed. Appx. 919 (2d Cir. 2005).  Petitioner has not argued that the computation of the AMT on her year 2000 return is incorrect, but she argues instead that

she is entitled to the benefit of section 59(g), even in the absence of the regulation permitted thereunder. Section 59(g) provides:

> SEC. 59(g). Tax Benefit Rule.--The Secretary may prescribe regulations under which differently treated items shall be properly adjusted where the tax treatment giving rise to such items will not result in the reduction of the taxpayer's regular tax for the taxable year for which the item is taken into account or for any other taxable year.

On brief, petitioner maintains that

> The "differently treated" item in the AMT system (that is, the ISO Spread that cannot be offset against capital loss, as otherwise permitted by section 422(c)(2) or as occurs naturally on a sale that is not a disqualifying disposition on a decline in value of the ISO stock) is precisely the type of situation that ought to be remedied under section 59(g). Otherwise, the imposition of AMT in this situation can produce results that are inequitable and unfair, by imposing a tax on "phantom income" that is not true economic income, and accordingly that will never be subject to tax in the regular tax system.

In the absence of the regulations that respondent is authorized, but not mandated, to promulgate under section 59(g), petitioner urges us, in effect, to do so. Petitioner cites Hillman v. IRS, 250 F.3d 228, 233 (4th Cir. 2001), revg. 114 T.C. 103 (2000), to support the proposition that in petitioner's type of situation an exception can be made to the literal application of the statutory provision (here, the AMT) because the literal

application of the AMT to petitioner's facts produces an absurd result.  Presumably petitioner believes regulations could be written to ameliorate such result.

It is not very clear what kind of regulation petitioner would like to have written even if we were in position to do so. Be that as it may, and to paraphrase the words of the Fourth Circuit in Hillman v. IRS, supra at 234, if there is an inequity in the AMT as applied to petitioner, only Congress or the Secretary (as the holder of delegated authority from Congress to modify the effects of the AMT in certain instances) has the authority to ameliorate the inequity.

Since our Opinion in Speltz v. Commissioner, 124 T.C. 165 (2005), contains a detailed analysis of "promotion of effective tax administration" as a ground for the compromise of a liability, and the analysis is equally applicable to the facts in this case, it is unnecessary for us to repeat this extensive analysis here.  Thus, this case is controlled by the result in Speltz.

As did the taxpayers in Speltz, petitioner has devoted a substantial part of her argument to the perceived unfairness of the AMT as applied to her specific facts.  The crux of petitioner's position, as in Speltz, appears to be that section 7122 trumps the literal application of the AMT statutes, and that, therefore, it was an abuse of discretion by the Appeals

Office not to accept her OIC.  See id. at 175-176.  As we pointed out there, "The unfortunate consequences of the AMT in various circumstances have been litigated since shortly after the adoption of the AMT.  In many different contexts, literal application of the AMT has led to a perceived hardship, but challenges based on equity have been uniformly rejected."  Id. at 176 (and cases cited therein).

Petitioner asserts "economic hardship" as a justification for compromise and that it should be expansively construed by respondent to constitute an available ground for accepting the OIC.  Pursuant to section 301.7122-1(c), Proced. & Admin. Regs., economic hardship constitutes a basis for compromise, although the compromise is classified within the ETA rubric.  ETA is bifurcated into subcategories of enumerated justifications for compromise in section 301.7122-1(c), Proced. & Admin. Regs.--the aforementioned public policy and equity, and economic hardship. The following three scenarios are depicted in section 301.7122-1(c), Proced. & Admin. Regs., as supporting (but not conclusive of) a determination of economic hardship:  A taxpayer suffering from a long-term illness, medical condition, or disability, which is expected to exhaust the taxpayer's financial resources; total depletion of a taxpayer's income resulting as a result of the provision of dependent care; and an inability of a taxpayer to exploit existing asset wealth in order to finance both basic

living expenses and to satisfy the outstanding tax liability.

As we said in Speltz v. Commissioner, supra at 178, under almost identical facts:

> Unlike the examples set forth under section 301.7122-1(c), Proced. & Admin. Regs., petitioners do not claim illness or a medical condition or disability; they do not have income that is exhausted providing for the care of dependents; and they have sufficient income to meet "basic living expenses". Petitioners' hardship argument is essentially that the tax liability is disproportionate to the value that they received from the ISOs and that they have already been forced to change their lifestyle unreasonably. ***

Petitioner's urgent plea in this case does not fall on deaf ears. We sympathize with petitioner's situation, but regrettably this type of hardship is not unique in the AMT-ISO arena. Id. at 177. It remains for Congress to address the issue if it chooses to do so, but as the Court of Appeals for the Seventh Circuit said in Kenseth v. Commissioner, 259 F.3d 881, 885 (7th Cir. 2001), affg. 114 T.C. 399 (2000): "it is not a feasible judicial undertaking to achieve global equity in taxation".

We have considered petitioner's many other arguments, but we find them to be without merit. We hold that petitioner failed to establish that the IRS abused its discretion on the basis of the promotion of effective tax administration when it refused petitioner's OIC.

At the hearing, petitioner moved orally to admit a "Third Stipulation of Facts" relating to an OIC by her husband, Kenneth Lee, who contemporaneously had a similar matter pending before

the IRS, which petitioner maintains is relevant to respondent's exercise of discretion in this case "under the public policy prong of the effective tax administration standard."  At the hearing, we took the motion under advisement.

Petitioner's motion appears to be in support of a convoluted argument made on brief that respondent should settle petitioner's case on the basis of the result petitioner would have obtained had she and her husband filed a joint return for the year 2000, which, in fact, they did not do.  We find this argument irrelevant and unconvincing, and petitioner's oral motion will be denied.

Respondent may proceed with the proposed levy.

<u>Order and Decision will be entered for respondent</u>.