T.C. Memo. 2007-56

UNITED STATES TAX COURT

GARY AND JOHNEAN HANSEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11175-05L.              Filed March 8, 2007.

<u>Terri A. Merriam</u>, <u>Jaret R. Coles</u>, <u>Asher B. Bearman</u>, and

<u>Jennifer A. Gellner</u>, for petitioners.[1]

<u>Thomas N. Tomashek</u> and <u>Gregory M. Hahn</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Petitioners petitioned the Court under section

6330(d) to review the determination of respondent's Office of

--------

[1] Pursuant to their requests, Jennifer A. Gellner and Asher B. Bearman were allowed to withdraw on Nov. 14 and 20, 2006, respectively.

Appeals (Appeals) sustaining a proposed levy related to petitioners' 1989 Federal income tax year.[2] Petitioners argue the proposed levy is improper because, they state, Appeals was required to accept their offer of $90,258 to compromise what they estimate is their $260,143 Federal income tax liability (inclusive of additions to tax, penalties, and interest) for 1987 through 1998.[3] We decide whether Appeals abused its discretion in rejecting that offer.[4] We hold it did not.

FINDINGS OF FACT

The parties filed with the Court stipulations of fact and accompanying exhibits. The stipulated facts are found accordingly. When the petition was filed, petitioners resided in Kennewick, Washington.

Beginning in 1987, petitioners' Federal income tax returns claimed losses and credits from their investment in partnerships organized and operated by Walter J. Hoyt III (Hoyt). One of

---

[2] Unless otherwise indicated, section references are to the applicable versions of the Internal Revenue Code. Dollar amounts are rounded.

[3] Petitioners submitted to respondent Form 656, Offer in Compromise, indicating that they were offering to compromise their tax liability for 1987 through 1996. Petitioners included with that submission a letter in which they stated that they wished to compromise their tax liability for 1987 through 1998. We read petitioners' offer to include 1987 through 1998.

[4] While the petition references sec. 6621(c) interest, respondent did not determine that petitioners were liable for such interest in the referenced years. We express no opinion on the subject.

these partnerships was Timeshare Breeding Service 1989-1 (TBS).

Hoyt was TBS's general partner and tax matters partner, and TBS

was subject to the unified audit and litigation procedures of the

Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248,

sec. 402(a), 96 Stat. 648.  Hoyt was convicted on criminal

charges relating to the promotion of TBS and other partnerships.

Petitioners' claim to losses and credits passing to them

from TBS resulted in the underreporting of their 1989 taxable

income.[5]  On October 22, 2002, respondent mailed to petitioners a

Letter 1058, Final Notice of Intent to Levy and Notice of Your

Right to a Hearing.  The notice informed petitioners that

respondent proposed to levy on their property to collect Federal

income tax (and any related amount) that they owed for 1989.  The

notice advised petitioners that they were entitled to a hearing

with Appeals to review the propriety of the proposed levy.

On November 18, 2002, petitioners asked Appeals for the

referenced hearing.  On January 11, 2005, Linda Cochran

(Cochran), a settlement officer in Appeals, held the hearing with

petitioners' counsel.  Cochran and petitioners' counsel discussed

two issues.  The first issue concerned petitioners' intent to

offer to compromise their 1987 through 1998 Federal income tax

---

[5] Petitioners' claim to losses and credits passing to them
from other Hoyt partnerships was the subject of an affected items
proceeding in this Court.  See Hansen v. Commissioner, T.C. Memo.
2004-269, affd. 471 F.3d 1021 (9th Cir. 2006).

liability to promote effective tax administration. Petitioners contended that Appeals should accept their offer as a matter of equity and public policy. Petitioners stated that it took a long time to resolve the Hoyt partnership cases and noted that Hoyt had been convicted on the criminal charges. The second issue concerned an interest abatement case under section 6404(e) that petitioners then had pending in this Court at docket No. 18896-03. That case related to 1989, the year at issue here, and petitioners claimed that the proposed levy should be rejected because the case was pending. On April 28, 2005, the Court entered a decision in that case stating that the parties agreed that petitioners were not entitled for 1989 to an abatement of interest under section 6404. That decision is now final.

On February 15, 2005, petitioners tendered to Cochran on Form 656, Offer in Compromise, a written offer to pay $90,258 to compromise their estimated $260,143 liability. The offer was limited to a claim of effective tax administration because petitioners had sufficient assets to pay their tax liability in full. Petitioners supplemented their offer with a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, four letters totaling approximately 65 pages, and volumes of documents. The Form 433-A reported that

petitioners owned assets with a total current value of $311,994,

inclusive of the following:[6]

| Assets | Current value |
|---|---|
| Cash in accounts | $101,981 |
| Retirement accounts | 120,903 |
| Vehicles: | |
| 1992 Chevy Lumina | 200 |
| 1993 Mercury Villager | 1,340 |
| 1999 Buick LeSabre | 3,230 |
| Home | 84,340 |
| | 311,994 |

The Form 433-A also reported the following monthly items of

income and expense:

| Items of income | Amount |
|---|---|
| Husband's wages | $8,512 |
| Wife's wages | 3,427 |
| | 11,940 (as rounded) |

| Items of expense | Amount |
|---|---|
| Food, clothing, and miscellaneous | $2,000 |
| Housing and utilities | 1,500 |
| Transportation | 300 |
| Medical expenses | 400 |
| Taxes | 4,000 |
| Life insurance | 227 |
| Other expenses | 275 |
| | 8,702 |

Cochran determined that petitioners' net realizable equity

in their cash was either the $101,981 reported in their bank

---

[6] Form 433-A states that each asset reported on the form should be valued at its "Current value", defined on the form as "the amount you could sell the asset for today".

accounts or $96,954[7] and that petitioners' net realizable equity in their retirement accounts and home was the same as the reported values.  Cochran also reduced the values of petitioners' vehicles by 20 percent to reflect their "quick sale values".[8] Cochran summarized petitioners' assets and liabilities as follows:

| Assets | Fair market value | Quick sale value | Encumbrance or exemption | Net realizable equity |
|---|---|---|---|---|
| Cash | $101,981 | -- | -- | $101,981/ 96,954 |
| Retirement accounts | 120,903 | -- | -- | 120,903 |
| Vehicles: | | | | |
| 1992 Chevy Lumina | 200 | $160 | -- | 160 |
| 1993 Mercury Villager | 1,340 | 1,072 | -- | 1,072 |
| 1999 Buick LeSabre | 3,230 | 2,584 | -- | 2,584 |
| Real Estate | 84,340 | -- | -- | 84,340 |
| | 311,994 | 3,816 | $0 | [1]311,200/ 306,013 |

[1] Petitioners' net realizable equity is actually $311,040. This slight mathematical error is not significant to the overall calculation.

Cochran made three adjustments to petitioners' reported expenses. First, she allowed $1,280 (instead of $2,000) for monthly food, clothing, and miscellaneous expenses.  Cochran made this

---

[7] Cochran arrived at the latter figure by reducing the amount of cash in petitioners' bank accounts by the cash they proposed to pay as part of the offer-in-compromise.  Petitioners stated on their Form 656 that "The taxpayers have placed a total of $85,231 on account as advance deposits; the remainder is from cash assets."  Cochran subtracted the claimed advance deposits ($85,231) from the offer amount ($90,258) and reduced the net realizable equity by $5,027 (from $101,981 to $96,954).

[8] Cochran was told by petitioners that they had ascertained the value of each vehicle by using its trade-in value and considering its condition to be "fair."

adjustment in accordance with respondent's national guideline amounts based on petitioners' monthly income and household size. Cochran also considered petitioners' particular circumstances but noted that they did not warrant allowing the higher figure submitted by petitioners. Second, Cochran allowed $1,093 (instead of $1,500) for monthly housing expenses. She made this adjustment in accordance with respondent's local guideline amounts and noted that petitioners had not documented any reason for deviating from these guidelines. Finally, Cochran allowed $2,100 (instead of $4,000) for monthly tax expenses. She arrived at this figure by calculating petitioners' monthly income and determining their approximate monthly tax liability. She noted that petitioners resided in Washington, which does not have a State income tax. In sum, Cochran concluded that petitioners had allowable monthly expenses of $5,675.

Cochran determined that petitioners' net realizable equity in their assets was either $311,200 or $306,013, see supra note 7, and that petitioners had a monthly disposable income of $6,265 ($11,940 in monthly income less $5,675 of monthly allowable expenses). Cochran also determined that petitioners could pay $300,720 from their future income.[9] In sum, Cochran

[9] Cochran arrived at $300,720 by multiplying petitioners' monthly disposable income of $6,265 by a factor of 48. Cochran used a 48-month factor because petitioners were offering to compromise their tax liability by paying cash. See Internal

(continued...)

concluded, petitioners' net realizable equity in assets and future income equaled $611,920 or alternatively $606,734.

On May 12, 2005, Appeals issued petitioners a notice of determination sustaining the proposed levy. The notice concludes that petitioners' $90,258 offer-in-compromise is not an appropriate collection alternative to the proposed levy. The notice, citing Internal Revenue Manual (IRM) sections 5.8.11.2.1 and 5.8.11.2.2, states that petitioners' offer does not meet the Commissioner's guidelines for consideration as an offer-in-compromise to promote effective tax administration on the basis of economic hardship or equity and public policy. Cochran noted that since petitioners' representative had not specified the basis on which they were making their effective tax administration offer, she considered it under both economic hardship and equity and public policy grounds.

As to petitioners' offer-in-compromise to promote effective tax administration due to economic hardship, the notice states that "the taxpayers have the ability to meet all their necessary living expenses and to pay all amounts owed from either their equity in assets or their income stream and still have equity and income". As to petitioners' offer-in-compromise to promote effective tax administration based on equity and public policy,

[9](...continued)
Revenue Manual (IRM) sec. 5.8.5.5.

the notice states: "the taxpayers' Effective Tax Administration offer proposal fails to meet the criteria for such consideration under Internal Revenue Manual 5.8.11.2.2 * * * [and], therefore, cannot be considered further." The notice further states as to Cochran's balancing of efficient collection with the legitimate concerns of taxpayers that

> The taxpayers' concerns about the proposed collection action generally fall into two areas: (1) pending litigation (the interest abatement case) and (2) a viable collection alternative in the form of their $90,258 offer in compromise.

> The Settlement Officer has balanced the taxpayers' first area of concern by withholding further collection activity regarding [sic] such time as the pending interest abatement case regarding 1989 (for the accrued interest still unpaid) or the pending TEFRA penalty case regarding 1989 (for the accrued failure to pay penalty) is decided.

> With respect to the taxpayers' second area of concern, the Settlement Officer has evaluated the taxpayers' $90,258 offer to compromise the underlying liabilities as a collection alternative to the proposed levy action. Based on that evaluation, the taxpayers' offer of $90,258 could not be recommended for acceptance, and therefore cannot be considered as a collection alternative.

The notice states that petitioners have neither offered an argument nor cited any authority to permit Appeals to deviate from the provisions of the IRM.

As to petitioners' claim at the hearing for an interest abatement, Cochran ascertained that petitioners had filed the case in this Court seeking an abatement of interest under section 6404(e) for 1989. Cochran stated in the notice of determination

that she had decided to stay collection activity relating to interest amounts while petitioners' interest abatement case for 1989 was pending in this Court.

OPINION

This case is another in a long list of cases brought in this Court involving respondent's proposal to levy on the assets of a partner in a Hoyt partnership to collect Federal income taxes attributable to the partner's participation in the partnership. Petitioners argue that Appeals was required to let them pay $90,258 to compromise their estimated $260,143 Federal income tax liability for 1987 through 1998. Where an underlying tax liability is not at issue in a case invoking our jurisdiction under section 6330(d), we review the determination of Appeals for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); see also Clayton v. Commissioner, T.C. Memo. 2006-188; Barnes v. Commissioner, T.C. Memo. 2006-150. We reject the determination of Appeals only if the determination was arbitrary, capricious, or without sound basis in fact or law. See Cox v. Commissioner, 126 T.C. 237, 255 (2006); Murphy v. Commissioner, 125 T.C. 301, 308, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006).

Where, as here, we decide the propriety of Appeals's rejection of an offer-in-compromise, we review the reasoning underlying that rejection to decide whether the rejection was arbitrary, capricious, or without sound basis in fact or law.

We do not substitute our judgment for that of Appeals, and we do not decide independently the amount that we believe would be an acceptable offer-in-compromise.  See Murphy v. Commissioner, supra at 320; see also Clayton v. Commissioner, supra; Barnes v. Commissioner, supra; Fowler v. Commissioner, T.C. Memo. 2004-163; Fargo v. Commissioner, T.C. Memo. 2004-13, affd. 447 F.3d 706 (9th Cir. 2006).  Nor do we usually consider arguments, issues, or other matters raised for the first time at trial, but we limit ourselves to matter brought to the attention of Appeals. See Murphy v. Commissioner, supra at 308; Magana v. Commissioner, 118 T.C. 488, 493 (2002).  "[E]vidence that * * * [a taxpayer] might have presented at the section 6330 hearing (but chose not to) is not admissible in a trial conducted pursuant to section 6330(d)(1) because it is not relevant to the question of whether the Appeals officer abused her discretion."  Murphy v. Commissioner, supra at 315.[10]

_____

[10] In Murphy v. Commissioner, 125 T.C. 301 (2005), affd. 469 F.3d 27 (1st Cir. 2006), the Court declined to include in the record external evidence relating to facts not presented to Appeals.  The Court distinguished Robinette v. Commissioner, 123 T.C. 85 (2004), revd. 439 F.3d 455 (8th Cir. 2006), and held that the external evidence was inadmissible in that it was not relevant to the issue of whether Appeals abused its discretion. In a memorandum that petitioners filed with the Court on April 13, 2006, pursuant to an order of the Court directing petitioners to explain the relevancy of any external evidence that they desired to include in the record of this case, petitioners made no claim that they had offered any of the external evidence to Cochran.  Instead, as we read petitioners' memorandum in the light of the record as a whole, petitioners wanted to include the
(continued...)

Section 6330(c)(2)(A)(iii) allows a taxpayer to offer to compromise a Federal tax debt as a collection alternative to a proposed levy. Section 7122(c) authorizes the Commissioner to prescribe guidelines to determine when a taxpayer's offer-in-compromise should be accepted. The applicable regulations, section 301.7122-1(b), Proced. & Admin. Regs., list three grounds on which the Commissioner may accept an offer-in-compromise of a Federal tax debt. These grounds are "Doubt as to liability", "Doubt as to collectibility", and to "Promote effective tax administration". Sec. 301.7122-1(b)(1), (2), and (3), Proced. & Admin. Regs. Petitioners reported on their Form 433-A that they had assets worth $311,994. Cochran determined that petitioners' reasonable collection potential (taking into account their assets as well as future income) was either $611,920 or $606,734. Petitioners can afford to pay their estimated $260,143 tax liability in full and do not argue that the liability is in doubt. They seek to qualify for an offer-in-compromise to promote effective tax administration. See sec. 301.7122-1(b)(3), Proced. & Admin. Regs.; cf. Fargo v. Commissioner, 447 F.3d 706

---

[10](...continued)
external evidence in the record of this case to prove that Cochran abused her discretion by not considering facts and documents that they had consciously decided not to give to her. Consistent with Murphy v. Commissioner, supra, we sustained respondent's relevancy objections to the external evidence. Accord Clayton v. Commissioner, T.C. Memo. 2006-188; Barnes v. Commissioner, T.C. Memo. 2006-150.

(9th Cir. 2006) (taxpayers made an offer-in-compromise to promote effective tax administration where they had sufficient assets to pay their tax liability in full).

Petitioners argue that respondent was required to compromise their tax liability to promote effective tax administration.  The Commissioner may compromise a tax liability to promote effective tax administration when collection of the full liability will create economic hardship and the compromise would not undermine compliance with the tax laws by taxpayers in general.  See sec. 301.7122-1(b)(3)(i), (iii), Proced. & Admin. Regs.  If a taxpayer does not qualify for effective tax administration compromise on grounds of economic hardship, the regulations also allow the Commissioner to compromise a tax liability to promote effective tax administration when the taxpayer identifies compelling considerations of public policy or equity.  See sec. 301.7122-1(b)(3)(ii), Proced. & Admin. Regs.

Cochran considered all of the evidence submitted to her by petitioners and applied the guidelines for evaluating an offer-in-compromise to promote effective tax administration. Although petitioners did not specifically state on which basis they were submitting their effective tax administration offer-in-compromise, Cochran considered it under both economic hardship and public policy and equity grounds.  Cochran determined that petitioners' offer was unacceptable because they had not

demonstrated that they would suffer economic hardship and public policy and equity reasons did not weigh in favor of accepting their offer.  Cochran's determination to reject petitioners' offer-in-compromise was not arbitrary, capricious, or without a sound basis in fact or law, and it was not abusive or unfair to petitioners.  Cochran's determination was based on a reasonable application of the guidelines, which we decline to second-guess.  See Speltz v. Commissioner, 124 T.C. 165 (2005), affd. 454 F.3d 782 (8th Cir. 2006); Clayton v. Commissioner, T.C. Memo. 2006-188; Barnes v. Commissioner, T.C. Memo. 2006-150.

Petitioners make six arguments in advocating a contrary result.  First, petitioners argue that the Court lacks jurisdiction to review the rejection of their offer-in-compromise.  Petitioners allege that Hoyt had a conflict of interest that prevented him from extending the periods of limitation for the partnerships in which petitioners were partners.  Petitioners conclude that any consents signed by Hoyt to extend the periods of limitation were invalid, which in turn means that the Court lacks jurisdiction because the applicable periods of limitation have otherwise expired.

Petitioners' challenge to this Court's jurisdiction is groundless, frivolous, and unavailing.  It is well settled that the expiration of the period of limitation is an affirmative defense and not a factor of this Court's jurisdiction.  See Day

v. McDonough, 547 U.S. ___, 126 S. Ct. 1675, 1681 (2006) ("A statute of limitations defense * * * is not 'jurisdictional'"); Kontrick v. Ryan, 540 U.S. 443, 458 (2004) ("Time bars * * * generally must be raised in an answer or responsive pleading."); see also Davenport Recycling Associates v. Commissioner, 220 F.3d 1255, 1259 (11th Cir. 2000), affg. T.C. Memo. 1998-347; Chimblo v. Commissioner, 177 F.3d 119, 125 (2d Cir. 1999), affg. T.C. Memo. 1997-535; Columbia Bldg., Ltd. v. Commissioner, 98 T.C. 607, 611 (1992); Robinson v. Commissioner, 57 T.C. 735, 737 (1972). Where, as here, the claim of a time bar relates to items of a partnership, the claim must be made in the partnership proceeding and may not be considered at a proceeding involving the personal income tax liability of one or more of the partners of the partnership. See Davenport Recycling Associates v. Commissioner, supra at 1259-1260; Chimblo v. Commissioner, supra at 125; Kaplan v. United States, 133 F.3d 469, 473 (7th Cir. 1998).

Second, petitioners argue that Cochran's rejection of their offer-in-compromise conflicts with the congressional committee reports underlying the enactment of section 7122. According to petitioners, their case is a "longstanding" case, and those reports require that respondent resolve such cases by forgiving interest and penalties that otherwise apply. We disagree with petitioners' reading and application of the legislative history

underlying section 7122. Petitioners' argument on this point is essentially the same argument that was considered and rejected by the Court of Appeals for the Ninth Circuit in Fargo v. Commissioner, 447 F.3d at 711-712. We do likewise here for the same reasons stated in that opinion. We add that petitioners' counsel participated in the appeal in Fargo as counsel for the amici. While petitioners in their brief suggest that the Court of Appeals for the Ninth Circuit knowingly wrote its opinion in Fargo in such a way as to distinguish that case from the cases of counsel's similarly situated clients (e.g., petitioners), and otherwise to allow those clients to receive an abatement of their liability attributable to partnerships such as those here, we do not read the opinion of the Court of Appeals for the Ninth Circuit in Fargo to support that conclusion.

Third, petitioners argue that Cochran inadequately considered their unique facts and circumstances. We disagree. Cochran reviewed and considered all information given to her by petitioners. On the basis of the facts and circumstances of petitioners' case as they were presented to her, Cochran determined that petitioners' offer did not meet the applicable guidelines for acceptance of an offer-in-compromise to promote effective tax administration based on economic hardship or public policy or equity grounds. We find no abuse of discretion in that determination. Nor do we find that Cochran inadequately

considered the information actually given to her by petitioners. With the exception of expenses that exceeded respondent's guidelines and excessive claimed tax expenses, Cochran allowed the full amount of petitioners' expenses. Moreover, Cochran allowed the full $400 that petitioners claimed in medical expenses even though they provided no documentation of any such expenses. Finally, Cochran allowed petitioners more than a month after their collection due process hearing to submit additional documents to support their position. We find that Cochran gave thorough consideration to all of petitioners' claims.

Fourth, petitioners argue that public policy demands that their offer-in-compromise be accepted because they were victims of fraud. We disagree. While the regulations do not set forth a specific standard for evaluating an offer-in-compromise based on claims of public policy or equity, the regulations contain two illustrative examples. See sec. 301.7122-1(c)(3)(iv), Examples (1) and (2), Proced. & Admin. Regs. The first example describes a taxpayer who is seriously ill and unable to file income tax returns for several years. The second example describes a taxpayer who received erroneous advice from the Commissioner as to the tax effect of the taxpayer's actions. Neither example bears any resemblance to this case. See Speltz v. Commissioner, 454 F.3d at 786. Unlike the exceptional circumstances exemplified in the regulations, petitioners' situation is neither

unique nor exceptional in that petitioners' situation mirrors that of numerous taxpayers who claimed tax shelter deductions in the 1980s and 1990s, obtained the tax advantages, promptly forgot about their "investment", and now realize that paying their taxes may require a change of lifestyle.[11]  See Clayton v. Commissioner, T.C. Memo. 2006-188; Barnes v. Commissioner, T.C. Memo. 2006-150.

We also believe that compromising petitioners' case on grounds of public policy or equity would not promote effective tax administration.  While petitioners portray themselves as victims of Hoyt's alleged fraud and respondent's alleged delay in dealing with Hoyt, they take no responsibility for their tax predicament.  We cannot agree that acceptance by respondent of petitioners' $90,258 offer to satisfy their estimated $260,143 tax liability would enhance voluntary compliance by other taxpayers.  A compromise on that basis would place the Government

---

[11] Of course, the examples in the regulations are not meant to be exhaustive, and petitioners' situation is not identical to that of the taxpayers in Fargo v. Commissioner, 447 F.3d 706, 714 (9th Cir. 2006), affg. T.C. Memo. 2004-13, regarding whom the Court of Appeals for the Ninth Circuit noted that "no evidence was presented to suggest that Taxpayers were the subject of fraud or deception".  Such considerations, however, have not kept this Court from finding investors in Hoyt's shelters to be culpable of negligence, see, e.g., Keller v. Commissioner, T.C. Memo. 2006-131, nor prevented the Courts of Appeals for the Sixth, Ninth, and Tenth Circuits from affirming our decisions to that effect in Hansen v. Commissioner, 471 F.3d 1021 (9th Cir. 2006), affg. T.C. Memo. 2004-269; Mortensen v. Commissioner, 440 F.3d 375 (6th Cir. 2006), affg. T.C. Memo. 2004-279; and Van Scoten v. Commissioner, 439 F.3d 1243 (10th Cir. 2006), affg. T.C. Memo. 2004-275.

in the unenviable role of an insurer against poor business decisions by taxpayers, reducing the incentive for taxpayers to investigate thoroughly the consequences of transactions into which they enter. It would be particularly inappropriate for the Government to play that role here, where the transaction at issue involves a tax shelter. Reducing the risks of participating in tax shelters would encourage more taxpayers to run those risks, thus undermining rather than enhancing compliance with the tax laws.[12] See Clayton v. Commissioner, supra; Barnes v. Commissioner, supra.

Fifth, petitioners argue that Cochran failed to balance efficient collection with the legitimate concern that collection be no more intrusive than necessary. We disagree. Cochran thoroughly considered this balancing issue on the basis of the information and proposed collection alternative given to her by petitioners. She concluded that "the proposed levy action regarding the taxpayers represents the only efficient means for

---

[12] Nor does the fact that petitioners' case may be "longstanding" overcome the detrimental impact on voluntary compliance that could result from respondent's accepting petitioners' offer-in-compromise. An example in IRM sec. 5.8.11.2.2 implicitly addresses the "longstanding" issue. There, the taxpayer invested in a tax shelter in 1983, thereby incurring tax liabilities for 1981 through 1983. He failed to accept a settlement offer by respondent that would have eliminated a substantial portion of his interest and penalties. Although the example, which is similar to petitioners' case in several respects, would qualify as a "longstanding" case by petitioners' standards, the offer was not acceptable because acceptance of it would undermine compliance with the tax laws.

collection of the liabilities at issue in this case". While petitioners assert that Cochran did not consider all of the facts and circumstances of this case, "including whether the circumstances of a particular case warrant acceptance of an amount that might not otherwise be acceptable under the Secretary's policies and procedures", sec. 301.7122-1(c)(1), Proced. & Admin. Regs., we find to the contrary. Cochran thoroughly considered petitioners' arguments for accepting their offer-in-compromise, and she rejected the offer only after concluding that petitioners could pay much more of their tax liability than the $90,258 they offered. Cf. IRM sec. 5.8.11.2.1(11) ("When hardship criteria are identified but the taxpayer does not offer an acceptable amount, the offer should not be recommended for acceptance").

Sixth, petitioners argue that Cochran inappropriately failed to consider whether they qualified for an abatement of interest for reasons other than those described in section 6404(e). We disagree. We note that in the notice of determination, Cochran decided to stay collection of interest while petitioners' interest abatement case was pending in this Court. Moreover, we find nothing to suggest that Cochran believed that petitioners' sole remedy for interest abatement in this case rested on the rules of section 6404(e). In fact, regardless of the rules of section 6404(e), Cochran obviously would have abated interest in

this case had she agreed to let petitioners compromise their estimated $260,143 liability by paying less than the amount of interest included within that liability.

We hold that Appeals did not abuse its discretion in rejecting petitioners' $90,258 offer-in-compromise.  In so holding, we express no opinion as to the amount of any compromise that petitioners could or should be required to pay, or that respondent is required to accept.  The only issue before us is whether Appeals abused its discretion in refusing to accept petitioners' specific offer-in-compromise in the amount of $90,258.  See Speltz v. Commissioner, 124 T.C. at 179-180.  We have considered all arguments made by petitioners for a contrary holding and have found those arguments not discussed herein to be irrelevant and/or without merit.

An appropriate order will be issued.