## NORMAN HINERFELD, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 20946–08L.      Filed September 27, 2012.

R issued to P a final notice of intent to levy with regard to P's unpaid trust fund recovery penalties totaling $471,696. P timely requested a collection due process (CDP) hearing with the Office of Appeals (Appeals) and submitted to Appeals an offer-in-compromise (OIC) of $10,000, followed by an amended OIC of $74,857. The settlement officer assigned to the case recommended that the amended OIC be accepted and submitted the matter to R's Area Counsel for review in accordance with I.R.C. sec. 7122(b). Upon review, Area Counsel discovered that P and his wife were named as defendants in a lawsuit alleging that P had fraudulently conveyed assets to his wife. Area Counsel recommended that P's amended OIC be rejected, and the Appeals Team Manager agreed. Appeals issued to P a final notice of determination rejecting his amended OIC and determining that it was appropriate to proceed with the proposed levy. P filed a timely petition for review with the Court. *Held*: Although the matter was raised for the first time in P's posttrial briefs, the Court will consider P's argument that Appeals and Area Counsel engaged in prohibited ex parte communications during the CDP hearing. *Held, further*, Appeals and Area Counsel were obliged to communicate with regard to P's amended OIC in accordance with I.R.C. sec. 7122(b), and consequently their communications were not prohibited ex parte communications within the meaning of Rev. Proc. 2000–43, 2000–2 C.B. 404. *Held, further*, Appeals did not abuse its discretion in deciding to accept Area Counsel's recommendation to reject P's amended OIC or in determining to proceed with the proposed levy.

*Richard Stephen Kestenbaum*, for petitioner.
*Donald Alan Glasel*, for respondent.

GALE, *Judge*: Pursuant to section 6330(d),[1] Norman Hinerfeld (petitioner) seeks review of respondent's determination to proceed with a levy to collect petitioner's unpaid trust fund recovery penalties (trust fund penalties), assessed pursuant to section 6672, for the quarterly periods ended September 30 and December 31, 2002, March 31, September 30, and December 31, 2003, and June 30, 2004. The issues for decision are: (1) whether respondent's Office of Appeals (Appeals) and Area Counsel in the Small Business/Self

---

[1] All section references are to the Internal Revenue Code of 1986, as amended.

Employed Division of the Office of Chief Counsel (Area Counsel) engaged in prohibited ex parte communications during petitioner's collection due process (CDP) hearing, and (2) whether Appeals abused its discretion in rejecting petitioner's amended offer-in-compromise.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. The parties agree that all of the stipulated exhibits are part of the administrative record of the proposed collection action at issue. At the time the petition was filed, petitioner resided in New York.

On June 10, 2006, respondent sent to petitioner by certified mail a Final Notice of Intent to Levy and Notice of Your Right to a Hearing with respect to unpaid trust fund penalties totaling $471,696. Petitioner submitted to Appeals a timely Form 12153, Request for a Collection Due Process or Equivalent Hearing, indicating that he was preparing an offer-in-compromise (OIC). Petitioner does not dispute that he is liable for the trust fund penalties at issue as a responsible person of Thermacon Industries, Inc. (Thermacon).

On July 17, 2006, petitioner submitted to Appeals an OIC of $10,000 based on doubt as to collectibility and a Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals.

On August 7, 2007, Settlement Officer Carol Berger (SO Berger) notified petitioner that his case had recently been transferred to her, and she requested that he update his Form 433–A. On August 16, 2007, petitioner submitted to SO Berger a revised Form 433–A. SO Berger subsequently determined that petitioner's reasonable collection potential was $74,857.[2] In early January 2008 petitioner amended his OIC to $74,857 (amended OIC).

On February 5, 2008, SO Berger recommended that the Internal Revenue Service (IRS) accept petitioner's amended OIC, and she requested Area Counsel's verification and review. Upon review of the matter, Area Counsel discovered

---

[2] At the time of petitioner's hearing, reasonable collection potential was defined as the amount that could be collected from a taxpayer from all available means. *See* Internal Revenue Manual (IRM) pt. 5.8.4.4 (Sept. 1, 2005). That definition currently appears at IRM pt. 5.8.4.3 (June 1, 2010).

that petitioner and his wife, Ruth Hinerfeld, were named as codefendants (along with other alleged business associates) in a lawsuit filed in the U.S. District Court for the District of New Jersey on October 2, 2007. The pending lawsuit, styled *Multi-Glass Atlantic, Inc. v. Alnor Assocs., LLC,* No. 1:07–cv–04760 (D.N.J. filed Oct. 2, 2007) (Multi-Glass lawsuit), concerned the sale of substantially all of Thermacon's assets pursuant to an asset purchase agreement petitioner signed on Thermacon's behalf on September 13, 2004, to Reelan Industries, Inc. (Reelan), a corporation wholly owned by petitioner's children and RJTL, Inc., a corporation wholly owned by Ruth Hinerfeld and petitioner's children. The asset purchase agreement valued the assets at $2.2 million.

Multi-Glass claimed that petitioner and the other defendants fraudulently conveyed substantially all of Thermacon's assets to Reelan, purposefully leaving Thermacon unable to satisfy obligations to its creditors, including Multi-Glass, which had obtained a $734,889 (Canadian dollars) default judgment against Thermacon in earlier litigation. Multi-Glass claimed an interest in the assets that Thermacon had transferred to Reelan under the asset purchase agreement.

After Area Counsel brought the Multi-Glass lawsuit to SO Berger's attention, she sent a letter to petitioner dated April 14, 2008, posing the following questions related to Thermacon:

2. An amended complaint of the above action [Multi-Glass lawsuit] filed 10/05/2007 names you as an officer of Thermacon Industries Inc. and Thermacon Penetec Systems, Inc. Are you currently an officer/owner/shareholder of either of these entities? If not, when did your association cease? Who did you sell to and what was the sale price? (Provide verification.)

Skip to question 4 if you were not an officer/owner of Thermacon or Thermacon Penetec Systems, Inc.

3. Under the complaint in the plaintiff's proposed discovery plan (filed 01/21/2008) they allege Thermacon transferred all of its assets to Reelan Industries, Inc. Who were/are the officer/owners of Reelan Industries, Inc?

By letter dated April 17, 2008, petitioner responded to SO Berger's questions as follows:

2. I terminated my employment with the Thermacon and Penetec companies in 2003. Since that date I have not been an officer or shareholder of either entity. All of the assets of of [sic] Thermacon and Penetec were liened by the LaSalle Bank supporting a $5.7 million loan to Thermacon.

In 2003 my wife purchased the LaSalle lien, which covered all of the Thermacon and Penetec assets, for $3.5 million. The net assets of Thermacon and Penetec totaled $2.2 million at that time. Immediately after assuming the lien why [sic] wife sold the Thermacon and Penetec assets to the Reelan Corporation for $2.2 million in the form of Notes and Preferred Stock. Reelan never paid the Cash/Notes portion of the purchase price and the Preferred Stock is worthless since Reelan was liquidated in 1986 [sic] with no net assets.

3. N.A.

Petitioner's responses conflicted with information in Area Counsel's possession. In response to question 2, petitioner claimed that he had not been an officer or shareholder of Thermacon since 2003 and that his wife sold the Thermacon assets. However, in his answer to the amended complaint in the Multi-Glass lawsuit, which is part of the administrative record, petitioner specifically admitted that he signed the asset purchase agreement on behalf of Thermacon on or about September 13, 2004. Further, even though petitioner admitted in the Multi-Glass lawsuit that he had acted on behalf of Thermacon in the 2004 asset sale to Reelan, he treated question 3 concerning Reelan's ownership as inapplicable to him on the grounds that he had no role in Thermacon's affairs in 2004.

Area Counsel reviewed petitioner's responses to SO Berger's April 14, 2008, letter and concluded that it would be premature to accept his amended OIC because the resolution of the Multi-Glass lawsuit might show that petitioner had participated in a fraudulent transfer of Thermacon's assets, exposing Ruth Hinerfeld as petitioner's nominee and providing a new source for the IRS to collect petitioner's unpaid trust fund penalties. [3]

The disposition of petitioner's OIC, which was first submitted to Appeals on July 17, 2006, was subject to the 24-month time restriction prescribed by section 7122(f). [4] In this

_____

[3] Respondent suggested at trial and on brief that petitioner's transfer of a residence to his wife was a fraudulent transfer. When this issue was considered in petitioner's CDP hearing, Appeals concluded that it was not a fraudulent transfer and Area Counsel agreed. The transfer of the residence accordingly played no role in the determination to reject petitioner's offer-in-compromise, and we decline to consider the issue further.

[4] Sec. 7122(f) was added to the Internal Revenue Code as part of the Tax Increase Prevention and Reconciliation Act of 2005 (TIPRA), Pub. L. No. 109–22, sec. 509(b)(2), 120 Stat. at 363, and provides that an OIC shall be deemed accepted by the Secretary if the OIC is not rejected by the Secretary before the date which is 24 months after the date of submission of the OIC. Sec. 7122(f) is effective for OICs submitted on or after July 16, 2006. TIPRA sec. 509(d).

regard, SO Berger conducted a telephone conference with petitioner's counsel on June 4, 2008, and informed him that her supervisor, Appeals Team Manager John O'Dea (ATM O'Dea), agreed with Area Counsel's recommendation to reject petitioner's amended OIC.[5] During this same telephone conference, SO Berger informed petitioner's counsel that Appeals was amenable to designating petitioner's liability "currently not collectible".[6] Petitioner rejected the proposal to place his account in currently not collectible status. By letter dated June 25, 2008, ATM O'Dea informed petitioner that his amended OIC had been rejected.

On July 28, 2008, Appeals sent petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) rejecting the amended OIC and sustaining the proposed levy. The notice of determination stated, in relevant part: (1) the amended OIC was investigated and recommended for approval by Appeals, but Area Counsel determined that there might be additional collection potential once a pending lawsuit was resolved, and (2) Appeals offered to designate petitioner's account currently not collectible as a less intrusive alternative to the proposed levy.

Petitioner filed a timely petition with the Court contesting respondent's determination to proceed with the proposed levy. Petitioner alleged that respondent erred: (1) in failing to agree to refrain from the proposed levy, and (2) in concluding that designating petitioner's account currently not collectible was an appropriate collection alternative.

Petitioner alleged in paragraph 5 of the petition that "Although an Offer in Compromise was submitted, and was recommended for approval by the Appeals Officer, [Area] Counsel determined that there may be additional collection potential based upon the possible resolution of an unrelated litigation." Petitioner did not expressly challenge the propriety of the communications between Appeals and Area Counsel in the petition or at any time before or during the trial of this case. Petitioner argued for the first time in his

---

[5] SO Berger disagreed with Area Counsel's opinion that petitioner's amended OIC should be rejected. However, authority to accept petitioner's OIC resided with ATM O'Dea. *See Johnson v. Commissioner*, 136 T.C. 475, 496 (2011) (and authorities threat cited); *see also* Delegation Order 5–1 (Rev. 2), IRM pt. 1.2.44.2 (May 19, 2006).

[6] *See* IRM pt. 5.16.1.1 (Dec. 1, 2006).

posttrial briefs that Appeals had engaged in prohibited ex parte communications with Area Counsel.

OPINION

I. *Collection Procedures*

Section 6331(a) authorizes the Secretary to levy upon all property and rights to property belonging to a taxpayer liable for taxes who fails to pay those taxes within 10 days of notice and demand for payment. The levy authorized in section 6331(a) may be made only if the Secretary has given written notice to the taxpayer at least 30 days before the day of the levy identifying the amount of the unpaid tax and informing the taxpayer of his right to a CDP hearing with Appeals. Secs. 6331(d), 6330(a).

If the taxpayer submits a timely request for a CDP hearing, section 6330(c)(1) requires Appeals to obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met. In addition, the taxpayer may raise at the CDP hearing any relevant issue relating to the unpaid tax or the proposed levy, including offers of collection alternatives such as OICs, or, in certain circumstances, a challenge to the underlying liability. Sec. 6330(c)(2)(A) and (B). At the conclusion of the CDP hearing, Appeals must determine whether to proceed with the collection action and shall take into account the required verification, issues raised by the taxpayer, and whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary. Sec. 6330(c)(3).

This Court has jurisdiction to review Appeals' administrative determinations. Sec. 6330(d)(1). Because petitioner does not dispute his liability for the trust fund penalties, we review Appeals' determination for abuse of discretion. *See Sego v. Commissioner*, 114 T.C. 604, 609 (2000); *Goza v. Commissioner*, 114 T.C. 176, 182 (2000). In reviewing a CDP determination for abuse of discretion, generally we consider only issues raised in the CDP hearing. *See Giamelli v.*

*Commissioner*, 129 T.C. 107, 115 (2007); *see also* sec. 301.6330–1(f)(2), Q&A–F3, Proced. & Admin. Regs. [7]

## II. *Ex Parte Communications*

As a preliminary matter, we consider whether petitioner should be permitted to raise the issue of whether Appeals and Area Counsel engaged in prohibited ex parte communications. Respondent asserts that petitioner's argument regarding the communications is a new issue and that the Court should decline to consider it now because it was not raised in the pleadings or at trial.

The principle that a party may not raise a new issue on brief is not absolute. Rather, it is founded upon the exercise of judicial discretion and frequently turns on a determination whether the opposing party will be prejudiced in having to respond to a belated issue which precludes or limits that party's opportunity to present pertinent evidence. *See Ware v. Commissioner*, 92 T.C. 1267, 1268 (1989), *aff'd*, 906 F.2d 62 (2d Cir. 1990); *see also Toyota Town, Inc. v. Commissioner*, T.C. Memo. 2000–40, *aff'd sub nom. Bob Wondries Motors, Inc. v. Commissioner*, 268 F.3d 1156 (9th Cir. 2001).

Petitioner's argument regarding impermissible ex parte contacts is not inconsistent with the pleadings, and respondent does not contend that he would suffer any meaningful prejudice if the Court considered the argument. Indeed, the record includes all the information the Court needs to resolve what is in essence a legal issue. Accordingly, we will consider petitioner's argument notwithstanding that it was raised for the first time in his posttrial briefs.

Congress directed the Commissioner to develop a plan to restrict ex parte communications between Appeals employees and other IRS employees, as part of the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. No. 105–206, sec. 1001(a)(4), 112 Stat. at 689. RRA 1998 sec. 1001(a)(4) provides as follows:

---

[7] Effective for CDP hearing requests made on or after November 16, 2006, the applicable version of the regulations is sec. 301.6330–1(f)(2), Q&A–F3, Proced. & Admin. Regs. *See* T.D. 9291, 2006–2 C.B. 887.

SEC. 1001. REORGANIZATION OF THE INTERNAL REVENUE
          SERVICE.

  (a) IN GENERAL.—The Commissioner of Internal Revenue shall develop
and implement a plan to reorganize the Internal Revenue Service. The
plan shall—

                    *    *    *    *    *    *    *

  (4) ensure an independent appeals function within the Internal Revenue
Service, including the prohibition in the plan of ex parte communications
between appeals officers and other Internal Revenue Service employees to
the extent that such communications appear to compromise the independ-
ence of the appeals officers.

In accordance with this congressional mandate, the Commis-
sioner issued Rev. Proc. 2000–43, 2000–2 C.B. 404, which
provides guidelines in question and answer format that are
designed to distinguish prohibited and permissible ex parte
communications between Appeals and other IRS employees
during an administrative appeal. [8] In so doing, the review
procedure does not adopt "formal ex parte procedures that
would apply in a judicial proceeding" but instead attempts to
"ensure the independence of the Appeals organization, while
preserving the role of Appeals as a flexible administrative
settlement authority, operating within the Internal Revenue
Service's overall framework of tax administration responsibil-
ities." *Id.* sec. 2.

  Citing Rev. Proc. 2000–43, *supra*, and certain other
administrative guidance, petitioner argues that the discus-
sions wherein Area Counsel alerted SO Berger to the Multi-
Glass lawsuit and the possibility of a fraudulent conveyance
and recommended rejection of petitioner's OIC constituted
prohibited ex parte communications which compromised the
independence of Appeals. Consequently, petitioner contends,
the case must be remanded for a supplemental hearing.
Respondent contends that the discussions between Area
Counsel and Appeals were not prohibited ex parte contacts.
We agree with respondent.

  Rev. Proc. 2000–43, Q&A–11, 2000–2 C.B. at 406, specifi-
cally addresses communications between Appeals and the
Office of Chief Counsel. Acknowledging the need for Appeals
employees to obtain legal advice from the Office of Chief
Counsel, A–11 provides three limitations on communications

---

[8] Rev. Proc. 2000–43, 2000–2 C.B. 404, has been superseded by Rev. Proc. 2012–18, 2012–10
I.R.B. 455, effective for communications after May 15, 2012.

between Appeals employees and Office of Chief Counsel attorneys: (1) Appeals employees must not communicate with Chief Counsel attorneys who have previously provided advice to the IRS employees who made the determination Appeals is reviewing; (2) requests for legal advice where the answer is uncertain should be referred to the Chief Counsel's National Office and handled as requests for field service advice or technical advice; and (3) although Appeals employees may obtain legal advice from the Office of Chief Counsel, they remain responsible for making independent evaluations and judgments concerning the cases appealed to them, and Counsel attorneys are prohibited from offering advice that includes settlement ranges for any issue in an appealed case.

There is no evidence that the Area Counsel attorneys with whom Appeals conferred in this case had previously advised any employee who made the determination under Appeals review; that is, any employee of the Collection Division who made the determination to levy on petitioner's property. In addition, the administrative record establishes that while SO Berger disagreed with Area Counsel's recommendation to reject petitioner's amended OIC, the decision to reject the OIC was made by ATM O'Dea who, rather than SO Berger, had the authority to do so.[9] Unlike SO Berger, ATM O'Dea agreed with Area Counsel's recommendation to reject. Given the substantial evidence that Area Counsel had marshaled to support the conclusion that petitioner had made a fraudulent conveyance,[10] we are satisfied that ATM O'Dea exercised independent judgment as contemplated in Rev. Proc. 2000–43, *supra*, when he agreed with Area Counsel's recommendation.[11] Thus, the communications between Appeals and Area

---

[9] *See supra* note 5.

[10] In deciding this case, we are not required to and do not determine whether petitioner engaged in any fraudulent conveyance. It is sufficient for our purposes that Area Counsel had uncovered substantial evidence of such a conveyance. The evaluation of whether Appeals committed an abuse of discretion turns in large part upon information available to it when a determination is made. In this regard, we note that the administrative record indicates that petitioner's answers to Appeals' queries concerning the sale of Thermacon's assets were on their face inconsistent with the position he took in his pleadings in the Multi-Glass lawsuit, and he made no effort to address those inconsistencies in the proceedings before Appeals or this Court.

[11] Petitioner makes much of the fact that SO Berger rather obviously disagreed with Area Counsel's recommendation to reject petitioner's amended OIC, contending that this fact demonstrates that SO Berger was unaware of her authority to reject Area Counsel's advice and of her obligation to reach an independent determination as provided in Rev. Proc. 2000–43, *supra*. The short answer to petitioner's argument is that SO Berger did not make the decision to reject the OIC; she lacked authority to do so. The decision on behalf of Appeals was made by ATM

Continued

Counsel in this case do not fall within the limitations prescribed in Rev. Proc. 2000–43, *supra*.

Moreover, review by Area Counsel here was mandated by statute. Section 7122(a) permits the Secretary to compromise any civil case arising under the internal revenue laws. Section 7122(d)(1) provides that the Secretary shall prescribe guidelines for IRS officers and employees to determine whether an OIC is adequate and should be accepted to resolve a dispute. Section 7122(b), however, provides that if the Secretary makes a compromise in a civil case in which the unpaid amount of the tax assessed is $50,000 or more, an opinion of the General Counsel for the Department of the Treasury, or his delegate, shall be placed on file in the office of the Secretary. *See also* sec. 301.7122–1(e)(6), Proced. & Admin. Regs.; Internal Revenue Manual (IRM) pt. 33.3.2.1(2) (Aug. 11, 2004).

Petitioner submitted his OIC to Appeals on the basis of "doubt as to collectibility", a concept that is defined in section 301.7122–1(b)(2), Proced. & Admin. Regs., as any case where the taxpayer's assets and income are less than the full amount of the liability. Section 301.7122–1(c)(2), Proced. & Admin. Regs., provides special rules for evaluating OICs based on doubt as to collectibility. Subdivision (ii)(A) of that provision states in relevant part:

(ii) *Nonliable spouses*.—(A) *In general*.—Where a taxpayer is offering to compromise a liability for which the taxpayer's spouse has no liability, the assets and income of the nonliable spouse will not be considered in determining the amount of an adequate offer. The assets and income of a nonliable spouse may be considered, however, to the extent property has been transferred by the taxpayer to the nonliable spouse under circumstances that would permit the IRS to effect collection of the taxpayer's liability from such property (e.g., property that was conveyed in fraud of creditors) * * *.

General Counsel for the Treasury has delegated responsibility for the legal review of OICs under section 7122(b) to the Office of Chief Counsel, with the concomitant authority to redelegate such responsibility. General Counsel Order No. 4 (Rev. Jan. 19, 2001); IRM pt. 33.3.2.1(3). The Office of Chief Counsel redelegated this authority to IRS Division Counsel in the Small Business/Self Employed Division. IRM pt.

O'Dea after what we are satisfied was an exercise of independent judgment.

33.3.2.1(3). The Small Business/Self Employed Division in turn redelegated this authority to Area Counsel and Associate Area Counsel. IRM pt. 5.17.1.4.2(2)(D) (Oct. 16, 2007).

IRM pt. 33.3.2.2(2) (Aug. 11, 2004) states that when Counsel review is required under section 7122(b), Counsel must determine whether the legal requirements for compromise have been met, and, if so, Counsel shall review the proposed acceptance for consistent application of the IRS' policies regarding whether the proposed compromise amount is acceptable. IRM pt. 33.3.2.3.2(2)(iii) (Aug. 11, 2004) states that when a taxpayer has submitted an OIC based on doubt as to collectibility, Counsel's review should include a determination of "whether fraudulent conveyances and/or transferee liability issues have been properly resolved." IRM pt. 33.3.2.2(3) cautions, however, that in making its determinations concerning acceptance of all OICs (i.e., those based upon doubt as to collectibility as well as doubt as to liability and effective tax administration), "Counsel must rely upon factual determinations made by the Service. These determinations should ordinarily not be reexamined by Counsel unless patently erroneous."

In sum, Area Counsel's review of and negative recommendation concerning petitioner's amended OIC, premised on its findings concerning the possibility of a fraudulent conveyance, was mandated by the statute, the regulations, and applicable administrative procedures.[12] Rev. Proc. 2000–43, *supra*, does not directly address ex parte communications that occur between Appeals and the Office of Chief Counsel

---

[12] Area Counsel obviously investigated and developed new facts not considered by Appeals with respect to petitioner's possible fraudulent conveyance. While the IRM provision noted above covering *all* OICs states that "ordinarily" Counsel should not reexamine factual determinations made by the Service "unless patently erroneous", we are satisfied that the IRM provision specifically addressed to OICs *based on doubt as to collectibility*, which directs Counsel to determine whether fraudulent conveyance issues have been "properly resolved", contemplates investigations like those undertaken by Area Counsel in this case and constitutes an exception to the general requirement that Counsel ordinarily defer with respect to factual determinations.

We further note that the prohibition on Appeals employees' communications concerning "the accuracy of the facts presented by the taxpayer and the relative importance of the facts to the determination" appears in Q&A–5 of Rev. Proc. 2000–43, *supra*, concerning communications between Appeals employees and employees of the "originating function" (i.e., the function where the determination was made that Appeals is reviewing). The prohibition is not stated in Q&A–11, concerning communications between Appeals employees and employees of the Office of Chief Counsel. Thus, to the extent communications between Appeals and Counsel concerning the facts of a case are restricted, those restrictions are found in the IRM rather than Rev. Proc. 2000–43, *supra*. The IRM nonetheless contemplates reexamination of facts by Chief Counsel employees in certain circumstances, including in connection with review of fraudulent conveyance issues.

pursuant to a statutory mandate, such as section 7122(b). However, Rev. Proc. 2000–43, *supra*, covers a comparable scenario in Q&A–16 concerning communications between Appeals and the Commissioner or other Service officials who have overall supervisory responsibility for IRS operations. Noting the Commissioner's supervisory responsibilities under section 7803, A–16 states that ex parte communications about specific cases are permissible between Appeals and the Commissioner and other IRS officials with overall supervisory responsibility. Thus, A–16 exempts ex parte communications that occur pursuant to the statutory responsibilities of IRS employees who communicate with Appeals employees in fulfillment of those responsibilities. We conclude that the same principle applies to Appeals employees' communications with Office of Chief Counsel employees in fulfillment of their responsibilities under section 7122(b).

In reaching this conclusion, we also apply the principle of statutory construction that where two statutes potentially conflict, a court should "'read the statutes to give effect to each if we can do so while preserving their sense and purpose.'" *Millsap v. Commissioner*, 91 T.C. 926, 937 (1988) (quoting *Watt v. Alaska*, 451 U.S. 259, 267 (1981)). We should attempt to interpret or reconcile them in a manner which will not cause an arbitrary or unreasonable result. *Id.* The predecessor of section 7122(d) was first enacted in 1868, *see* Act of July 20, 1868, ch. 186, sec. 102, 15 Stat. at 166, and a $500 threshold for review was added as part of the Internal Revenue Code of 1954, ch. 74, sec. 7122(b), 68A Stat. at 849. The threshold in section 7122(b) for compromised liabilities requiring General Counsel review was more recently raised to $50,000 from $500 in 1996. *See* Taxpayer Bill of Rights 2, Pub. L. No. 104–168, sec. 503(a), 110 Stat. at 1461. Two years later in RRA 1998 sec. 1001(a)(4) Congress directed the Commissioner to develop a plan restricting ex parte communications between Appeals employees and other IRS employees. Nothing in the legislative history of RRA 1998 sec. 1001(a)(4) suggests that Congress intended that directive to circumscribe the review of an OIC by the General Counsel (or his delegate) mandated in section 7122(b) where the OIC is the subject of Appeals consideration. Rev. Proc. 2000–43, *supra*, can be readily interpreted to permit full review by the Office of Chief

Counsel of an OIC based on doubt as to collectibility, including nondeferential factual determinations incident to the issue of a fraudulent conveyance. The applicable IRM guidelines buttress that interpretation. We reject petitioner's arguments to the contrary, which contend that Area Counsel's investigation and development of the facts concerning a possible fraudulent conveyance and negative recommendation to Appeals concerning the OIC as a result constitute prohibited ex parte communications contemplated by Congress and proscribed by Rev. Proc. 2000–43, *supra*.

For the foregoing reasons, we hold that communications between employees of the Office of Chief Counsel and Appeals to facilitate compliance with section 7122(d) are not prohibited ex parte communications for purposes of RRA 1998 sec. 1001(a)(4) or Rev. Proc. 2000–43, *supra*.

## III. *Abuse of Discretion*

Aside from his ex parte communications argument, petitioner contends that an abuse of discretion occurred because Area Counsel exercised undue influence over what should have been an independent review of his amended OIC by Appeals and SO Berger did not understand she need not accept Area Counsel's negative recommendation. As previously discussed, Area Counsel's review and recommendation concerning petitioner's OIC was mandated by statute and complied with applicable regulations and administrative procedures; SO Berger lacked authority to accept the OIC; and we are satisfied ATM O'Dea, who had such authority, exercised independent judgment in accepting Area Counsel's recommendation. When he did so, ATM O'Dea had before him substantial evidence that petitioner had effected a fraudulent conveyance of the Thermacon assets *and* petitioner's inconsistent representations regarding when he ceased to control those assets.

Generally, a doubt as to collectibility OIC may be accepted only when it equals or exceeds the taxpayer's reasonable collection potential. IRM pt. 5.8.1.1.3(3) (Sept. 1, 2005); *see also* Rev. Proc. 2003–71, sec. 4.02(2), 2003–2 C.B. 517, 517. Amounts includible in a taxpayer's reasonable collection potential include amounts collectible from third parties through judicial action, such as a suit to set aside a fraudu-

lent conveyance. IRM pt. 5.8.4.4.1 (Sept. 1, 2005). The Thermacon assets for which there was substantial evidence of a fraudulent conveyance and about which petitioner appeared to be dissembling were conceded by him to be worth $2.2 million at the time of transfer. In view of the time constraints imposed by section 7122(f) and the apparently protracted nature of the Multi-Glass lawsuit, petitioner was offered the collection alternative of placing his account in currently not collectible status, which he rejected. In these circumstances, ATM O'Dea's decision to reject an OIC to settle trust fund penalties totaling $471,696 for $74,857 was not an abuse of discretion. If anything, this case illustrates not an abuse of discretion by IRS employees but instead the wisdom of requiring the Office of Chief Counsel's review of fraudulent conveyance issues.

IV. *Conclusion*

Petitioner did not challenge the existence or amount of his liability for the trust fund penalties that respondent seeks to collect, nor did he raise any other challenges to the appropriateness of the collection action. Because we have found that there were no prohibited ex parte communications and that there was no abuse of discretion in rejecting petitioner's amended OIC, we conclude that respondent correctly determined to proceed with the proposed levy.

To reflect the foregoing,

*Decision will be entered for respondent.*